MALLORY ASSOCIATES, INC., Appellant, *v.* BARVING REALTY CO., INC., et al., Respondents.

Argued December 1, 1949; decided December 29, 1949.

*Jules E. Gilbert* and *Harold Gilbert* for appellant.   I. Section 233 of the Real Property Law applies.   (*Demarest* v. *Wynkoop,* 3 Johns. Ch. 129; *Settle* v. *Van Evrea,* 49 N. Y. 280; *Matter of Meyer,* 209 N. Y. 386; *Town of Putnam Valley* v. *Slutzky,* 283 N. Y. 334; *Flynn* v. *Prudential Ins. Co.,* 207 N. Y. 315; *Furey* v. *Town of Gravesend,* 104 N. Y. 405; *Archer* v. *Equitable Life Assur. Soc.,* 218 N. Y. 18; *Matter of Hamlin,* 226 N. Y. 407; *Matter of Clark,* 168 N. Y. 427.)   II. The law of leases compels the application of section 233 in this instance.   Applying the section does not give it extraterritorial effect.   (*Selover, Bates & Co.* v. *Walsh,* 226 U. S. 112; *Matter of Barnett,* 12 F. 2d 73; *Polson* v. *Stewart,* 167 Mass. 211; *Atwood* v. *Walker,* 179 Mass. 514.)

*Nathan Frankel* for respondents.   I. Section 233 of the Real Property Law does not apply inasmuch as no moneys were deposited or advanced.   (*Sternaman* v. *Metropolitan Life Ins. Co.,* 170 N. Y. 13; *Dorman* v. *Gannon,* 4 App. Div. 458; *People ex rel. Heermance* v. *Dederick,* 35 App. Div. 29; *People* v. *Gluck,* 188 N. Y. 167; *Planetary Recreations, Inc.,* v. *Kerns, Inc.,* 54 N. Y. S. 2d 418.)   II. Plaintiff has no cause of action for conversion either at common law or under the provisions of section 233 of the Real Property Law since these provisions have no extraterritorial effect.   (*Mertz* v. *Mertz,* 271 N. Y. 466; *Ewen* v. *Thompson-Starrett Co.,* 208 N. Y. 245; *Whitford* v. *Panama R. R. Co.,* 23 N. Y. 465; *Catt* v. *Catt,* 118 App. Div. 742; *White* v. *Howard,* 46 N. Y. 144; *Muck* v. *Hitchcock,* 212 N. Y. 283; *Adler* v. *Deegan,* 251 N. Y. 467; *Jacobus* v. *Colgate,* 217 N. Y. 235; *Ehrsam* v. *City of Utica,* 37 App. Div. 272.)

CONWAY, J.   In November, 1946, the plaintiff, Mallory Associates Inc., leased from defendant, Barving Realty Co., Inc.,

the Atlantic Hotel, located in Norfolk, Virginia, for a period of fifteen years. The lease provided: "The Tenant has this date deposited with the Landlord the sum of Sixty-Five Thousand ($65,000.) Dollars, receipt of which is hereby acknowledged, without interest as security for the full and faithful performance by the Tenant of all the terms, covenants and conditions of this lease upon the Tenant's part to be performed, its being understood that the Landlord shall have the right to use said moneys toward the purchase of the Leased Premises, The Landlord shall return to the Tenant upon condition that the Tenant shall be in no wise in default under any of the terms of this lease, the sum of Three Thousand ($3,000.) Dollars on December 1st of each year commencing with December 1, 1950, until the expiration of this lease, at which time the unpaid balance of the security will be returned to the Tenant provided the Tenant has fully and faithfully carried out all of the terms, covenants and conditions on the Tenant's part to be performed, less any amount to cover all damages sustained by the Landlord by reason of any breach by the Tenant of any of the terms or conditions of this lease. * * * " Both the landlord and the tenant are New York corporations with offices in New York. The individual defendants are officers and directors of defendant Barving Realty Co., Inc. The lease was executed in the city of New York and, pursuant to it, the $65,000 deposit of security was paid over to defendant Barving Realty Co., Inc., in the city of New York on November 15, 1946.

Alleging that the defendants did " on or about the said 15th day of November, 1946, in the City and State of New York, mingle and cause to be mingled " the $65,000 security deposit " with the personal moneys of the said defendant Barving Realty Co., Inc." and that they did "wrongfully and unlawfully, convert and appropriate the said sum * * * to the use of the defendant Barving Realty Co., Inc.", the plaintiff-tenant commenced this action to recover the security deposit, with interest from November 15, 1946.

Prior to the enactment of section 233 of the Real Property Law (L. 1935, ch. 581), and in the absence of facts from which a contrary intention could be inferred (*Matter of Atlas,* 217 App. Div. 38), it was uniformly held that a deposit of security by a tenant under a lease created a debtor-creditor relation-

ship and that the landlord had the right to use such moneys until the date specified for repayment. (*Mendelson-Silverman, Inc.*, v. *Malco Trading Corp.*, 262 N. Y. 621; *Malco Trading Corp.* v. *Mendelson-Silverman, Inc.*, 240 App. Div. 322; *Rambach* v. *Heights Theatres*, 239 App. Div. 203; *Jahmes Co.* v. *Propper*, 238 App. Div. 326; *Levinson* v. *Shapiro*, 238 App. Div. 158.)

The Legislature changed that rule in 1935 by adding a new section 233 to the Real Property Law, which reads as follows:

" Whenever money shall be deposited or advanced on a contract for the use or rental of real property as security for performance of the contract or to be applied to payments upon such contract when due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same, but may be disposed of as provided in section thirteen hundred and two-a of the penal law. Any provision of such a contract whereby a person who so deposits or advances money waives any provision of this section is absolutely void."

Defendants moved to dismiss the instant complaint on the ground that it did not state facts sufficient to constitute a cause of action. Special Term indicated that the complaint did state a cause of action in conversion under the above-quoted provisions of section 233, but held that the statute was inapplicable because the deposit of security in the case at bar was made under a lease relating to real property located outside of the State of New York. The court stated that, during the depression, the financial standing of many landlords became impaired or destroyed, that in the resulting insolvencies, the tenant frequently suffered not only the loss of his leasehold but also the loss of his security deposit, that this evil was one of great gravity, particularly in the city of New York, and that the Legislature, in enacting section 233 to remedy this evil, was concerned solely with conditions existing here and not elsewhere.

The provision in the lease for the deposit of security is a personal covenant between the contracting parties, creating

rights in personam. It is not concerned with the creation or transfer of any interest in real property. The question presented by the instant case relates solely to the rights and liabilities of the parties as a matter of contractual obligation. Accordingly, it is to be determined by the law governing the contract, even though the subject matter of the contract may be land in another State.

Thus, in *Matter of Barnett* (12 F. 2d 73, certiorari denied *sub nom. United Cigar Stores Co.* v. *Rayher,* 273 U. S. 699) the court said (pp. 76-77):

" But the term ' lease ' is commonly used as including something more than the mere legal act by which a tenancy is created, and embraces what are described as the ' covenants of the lease,' which create rights in personam, as distinguished from rights in rem. In so far as it creates rights in personam, the question arises whether the ' contract ' into which the parties have entered is to be governed by the lex loci rei sitæ, or by the lex loci contractus.

" The lease in this case, as already stated, was made in the city of New York, where both parties to the lease maintained offices and were engaged in business. It must be admitted that the lease, in so far as it affects the creation of an interest in real estate, is governed by the law of the situs. But although a lease relates to an interest in real property, and in so far as it so relates is governed by the lex loci rei sitæ, the personal covenants between the contracting parties, though contained in a contract affecting realty are governed by the lex loci contractus; and as the contract of lease was made in New York, and the deposit was delivered to the lessor in New York, and rent was payable in New York, the law of New York governs as to the purely personal covenants." (See, also, 2 Beale on Conflict of Law, § 340.1, which quotes from the *Barnett* case, *supra*; Goodrich on Conflict of Laws, § 145; Restatement, Conflict of Laws, § 341, subd. [1]; *United States* v. *Warren R. R. Co.,* 127 F. 2d 134, 136.) (See, also, *Walsh* v. *Selover, Bates & Co.,* 109 Minn. 136, affd. *sub nom. Selover, Bates & Co.* v. *Walsh,* 226 U. S. 112; *Polson* v. *Stewart,* 167 Mass. 211, 214.)

In enacting section 233, the Legislature was attempting to prevent the depletion of funds deposited with the lessor. The

method used was to transform the usual debtor-creditor relationship between the lessor and the lessee into one of trust relationship, by operation of law. The security deposit paid over and held in this State was the thing to be protected. The lessee, resident in this State, was the person to be protected. The need for protection is obviously no less, but rather more, when the land to which the lease relates is situated outside of this State. The Legislature did not expressly limit the statute to deposits made under a contract for the use or rental of real property situated in New York, and we do not think it should be thus limited by judicial construction. The protection afforded by section 233 should apply to funds deposited in New York as security under a contract of lease made in New York between corporations created by New York, even though the real property which is the subject matter of the contract is located elsewhere. In so holding, we are not giving extraterritorial operation to the statute, but, on the contrary, in accordance with the evident legislative intent, we are permitting it to govern the rights and liabilities of corporations created by New York, under a New York contract, with respect to a New York subject matter, viz., the security deposit.

Defendants further assert that the statute is inapplicable because no moneys were deposited or advanced by plaintiff since the so-called security deposit was really a loan by plaintiff to defendants to enable them to purchase the property from plaintiff. It is a sufficient answer to this contention that the facts upon which it is based do not appear in the complaint and that is the only document with which we are here concerned. As noted, the complaint clearly states that plaintiff " did pay over the said sum of security to defendant " and in the lease, defendant acknowledged receipt. Furthermore, even though defendants may have had the right to use said moneys toward the purchase price of the leased premises, section 233, by its terms, requires that the funds be held in trust " until repaid *or so applied* ". (Emphasis supplied.)

We need not consider on this motion to dismiss the complaint, the extent of plaintiff's possible recovery, and the situation of the parties thereafter if plaintiff should prevail. Those questions are not in any way argued here, nor were they discussed below. It is enough now to decide that the

complaint states a cause of action and that the case should go to trial.

The judgments should be reversed and the motion to dismiss the complaint denied, with costs in all courts.

FULD, J. (dissenting). Plaintiff brought this action to recover $65,000 upon the ground that it had been converted by defendants. The conversion, the complaint alleges, was committed on the very day that defendants received the moneys in question "as security" for a lease, by their act of causing them "to be mingled". The lease itself recited that it was "understood that the Landlord shall have the right to use said moneys toward the purchase of the Leased Premises", and, upon the oral argument before us, it was acknowledged that the moneys were so used.

To recover in the action, it was incumbent upon plaintiff to establish, first, that section 233 of the Real Property Law of this state was applicable and operative where the lease covered land in jurisdictions other than New York and, second, that the $65,000 which plaintiff paid to defendants was a trust fund which was to be held separate and apart from the landlord's funds and not mingled with them. The court at Special Term dismissed the complaint for insufficiency, and the Appellate Division unanimously affirmed its order.

I agree with the determination that has been made. In the first place, the lease between the parties unequivocally demonstrates that the fund was not to be held in trust, and, in the second place, it is manifest that section 233 of the Real Property Law operates only upon moneys deposited as security under leases for land located in New York.

We may start with the proposition that the legislature of this state, in enacting the Real Property Law and in adding provisions to it, was only interested in, and concerned with, property located within this jurisdiction. The court at Special Term analyzed the situation that prompted the legislature to enact section 233 and came to the conclusion — properly, I venture — that the legislature gave thought solely to deposits of security under leases relating to real estate in New York.

If the legislature had intended to deal with real property situated outside of New York, it could easily have done so.

An examination of the other provisions in the Real Property Law discloses that, on those few occasions, when the legislature purposed to deal with such property, it said so explicitly. In section 536, for instance, express and plain is the reference to real estate " *situate without the state* ". (Emphasis supplied.)

I suggest, therefore, that, on the basis of need, of reason and of language, the legislature, in enacting section 233, did not intend to protect security deposits under leases relating to real property in other states. And we cannot expand the scope of the statute beyond that contemplated by the legislature by characterizing the security provision in a lease as a " personal covenant."

In any event, even if section 233 were to be held applicable to leases relating to land outside of New York, the agreement itself establishes that that section is not applicable. Neither plaintiff nor defendant ever expected that the $65,000 was to be held intact as security or inviolate as a trust. As noted above, after reciting that the tenant deposited the $65,000 " as security ", the parties expressly stated that it was " understood that the Landlord shall have the right to use said moneys toward the purchase of the Leased Premises ". In the light of such a provision, it is difficult, nay impossible, to see how the landlord was under the duty of treating and holding those moneys as a trust fund. Permission to use the funds to purchase the very property which is the subject of the leasehold decisively proves that it was not intended that the landlord hold the fund as a trust throughout the leasehold period. Certainly, where the tenant depositor expressly sanctions a use of the moneys " deposited " for the purchase of the subject property, it is highly unreasonable to say that the landlord is guilty either of a conversion or — by reason of section 1302-a of the Penal Law — of a larceny if he does not hold them intact throughout the entire period of the lease, but, as is here the case, uses them to purchase the leased premises.

It is true that section 233 forbids a lease " provision " that " waives " any of the statute's provisions relating to the inviolability of a fund deposited as security. But the provision in this lease which expressly authorizes the landlord to use the amount deposited for the very purpose of buying the property to be leased cannot be said to be a waiver within the meaning of the

statute. The legislature merely wanted to prevent a landlord from insisting that he should be able to deal with a fund given to him as security for rent in any way he chose. Here, the situation is entirely different from that envisaged by the legislature. The lease indicates that there would never have been a leasehold of this Virginia property, that there would never have been a landlord-tenant relationship, had the tenant not empowered the landlord to employ the money to buy the premsies. That authorization in the lease makes it clear that the deposit was not to be held intact and inviolate — as deposits for security would be — throughout the term of the lease and then returned. In short, the " deposit " was not of the type which the legislature intended to come within the ambit or compass of section 233. The paragraph of the lease in question must be read as a whole; we may not emphasize or isolate a particular phrase or clause, particularly when, in doing so, we effect an unreasonable result.

I do not mean to suggest that section 233 may be avoided by subterfuge; if some device is attempted simply to circumvent the nonwaiver provision of the statute, the courts will quickly strike it down. Where the so-called " deposit " is given to the landlord, however, for the very purpose of enabling him to bring the leasehold into existence, it cannot be said that resort was had to a subterfuge.

In my view, the courts below were correct in ruling that the complaint does not state a cause of action; the judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS and DYE, JJ., concur with CONWAY, J.; FULD, J., dissents in opinion in which DESMOND and BROMLEY, JJ., concur.

Judgments reversed, etc. [See 300 N. Y. 680.]