3 N.Y.2d 302 (1957)
Allied Thermal Corporation et al., on Behalf of Themselves and All Others Similarly Situated, Appellants,
v.
James Talcott, Inc., Respondent, et al., Defendant.
Court of Appeals of the State of New York.
Argued May 7, 1957.
Decided July 3, 1957.
Julius Wolfson and M. M. Leichter for appellants.
Jack S. Hoffinger and Reuben Golin for respondent.
DYE, FULD, VAN VOORHIS and BURKE, JJ., concur with DESMOND, J.; CONWAY, Ch. J., dissents in an opinion in which FROESSEL, J., concurs.
*303 DESMOND, J.
The question is as to whether the language "for the improvement of real property" in section 36-b of the Lien Law (funds received by subcontractor constitute trust funds, etc.) applies to the improvement of real property in States other than New York. Of course, if we read that statute literally and off by itself, there is nothing in it limiting it to subject real property in this State. However, section 36-b must be read as part of articles 2, 3 and 3-A of the Lien Law which constitute New York State's complete scheme for the protection of the rights of those who provide labor and materials for the improvement of real property. At no place in any of the numerous sections which together make up that statutory scheme is there definite reference to "New York State". It was, apparently, considered so obvious that New York real property alone was involved that it was unnecessary to say so. The phrase: "for the improvement of real property" which we are here construing in section 36-b recurs over and over throughout these sections. In no place is "New York State" mentioned but in no place *304 is there any doubt that New York State alone is intended. In fact, when "real property" is mentioned in any of our statutes there is never a specification that New York real property alone is intended, as witness the definitions in section 2 of the Real Property Law, subdivision 6 of section 2 of the Tax Law, section 40 of the General Construction Law, as well as in section 2 of the Lien Law itself.
The purpose of section 36-b of the Lien Law is precisely the same as that of all the other sections in articles 2, 3 and 3-A of that law, that is, to provide special protection for those whose services and materials enhance the value of real property. Since that is the general purpose of all these enactments there seems no reason to single out section 36-b as having to do with the improvement of real property in some other State.
Other States including Pennsylvania (see Martindale-Hubbell, Lawyers' Directory, Vol. III, Digest of Pennsylvania Laws, under heading "Mechanics Liens") have their own peculiar systems of statutory protections for materialmen and laborers. Only confusion could result from applying one part of a particular State's statutory system to a real property improvement situated in another State where the local statutory scheme is quite different.
The judgment should be affirmed, with costs.
CONWAY, Ch. J. (dissenting).
In substance the complaint alleges that Baker, Smith & Co., Inc., a subcontractor (hereinafter referred to as Baker Smith), a New York Corporation which has since been adjudicated a bankrupt, contracted with Hegeman-Harris Co., Inc., a general building contractor, to furnish labor and materials for an improvement of "certain real property"; that plaintiffs furnished materials to Baker Smith for this improvement for which they have not been paid; that Baker Smith received in New York, as partial payment for the improvements on the realty, checks totalling $180,314.86 which it indorsed over to defendant-respondent James Talcott, Inc., in New York; and that at the time defendant Talcott received these checks, it knew their source and by accepting them participated with Baker Smith in a wrongful diversion of funds impressed with a trust for the benefit of plaintiffs. Talcott & Co., the respondent, is a factor.
We must accept as true plaintiffs' allegations that (a) New York is the residence of the principals to all relevant contracts *305 and of the diverting parties; (b) the execution of the contracts between Baker Smith and Hegeman-Harris took place in New York; (c) the payment of the trust funds to Baker Smith occurred in New York; (d) the delivery of the trust funds by Baker Smith to Talcott was made in New York; and (e) the diversion of the trust funds took place in New York. The real property which was the subject of the improvement is located in Pennsylvania.
The plaintiffs, in this representative action for all those similarly situated, contend that the funds paid to Baker Smith became trust funds by virtue of section 36-b of the Lien Law which provides: "The funds received by a subcontractor from an owner or contractor or subcontractor for the improvement of real property are hereby declared to constitute trust funds in the hands of such subcontractor to be applied first to the payment of the claims of the subcontractors, laborers and materialmen, arising out of the improvement * * * and any subcontractor * * * who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the penal law. Such trust may be enforced by a civil action maintained as provided in article three-a of this chapter by any person entitled to share in the fund, whether or not he shall have filed, or had the right to file, a notice of lien or shall have recovered a judgment for a claim arising out of the improvement." (Italics supplied.)
Eleven other trust fund provisions, varying in similarity to the above, are contained in sections 4-a, 13 (subds. [3], [5], [6], [7]), 25 (subds. [5], [6]), 25-a, 25-b, 36 and 36-a. These trusts are enforcible under article 3-A of the Lien Law "by any person entitled to share in the trust fund in a representative action brought for the benefit of all persons entitled to share in the fund." (§ 71.)
The only issue in this case is whether the statute applies to funds paid in New York State to a subcontractor in payment for improvements to realty which is located in another State.
One thing should be noted initially  section 36-b, just quoted, does not provide for a lien, nor does it purport to confer any rights in real property, here or anywhere. What it does do is to impress a trust upon a fund for the benefit of a class of *306 persons whose rights are assertable under article 3-A in respect to that fund only. The res is the fund, not the real property. In the case of a wrongful diversion of those funds, there is created a right in personam to proceed against those who have so dealt with those funds, to the extent of the fund. Clearly, therefore, there can be no question of extraterritorial statutory effect, as the respondent contends, simply because the realty is not situate in New York. And just as clearly the remedy under article 3-A and section 36-b does not embody the in rem lien concept, with its territorial restrictions, which is the essence of the bulk of the New York Lien Law. There is no doubt that the Legislature has the power to impress with a trust funds paid and diverted in this State regardless of where the realty is located. Consequently, it remains only to decide whether the Legislature intended to limit the application of section 36-b to payments made to subcontractors in connection only with improvements on real property within the State of New York, or whether it was intended to apply where, as in this case, the funds were paid and diverted here in New York in fraud of New York materialmen, though the realty be elsewhere.
Our brother Judges, in holding that section 36-b does not apply, predicate their determination, in the main, upon the ground that, though nowhere in the Lien Law is the phrase "real property" restricted to New York realty, it must be assumed that the Legislature was concerned only with real property located within this jurisdiction. It is impossible for us to agree, particularly since this court has already, on another occasion, rejected a similar argument. In Mallory Associates v. Barving Realty Co. (300 N.Y. 297), we were called upon to construe section 233 of the Real Property Law which provides: "Whenever money shall be deposited or advanced on a contract for the use or rental of real property as security for performance of the contract or to be applied to payments upon such contract when due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made * * *." (Italics supplied.) We held that section 233 applied to a deposit made in New York though the lease was of real property located in Virginia. In so holding, we said at pages 301-302: "In enacting section 233, the Legislature was *307 attempting to prevent the depletion of funds deposited with the lessor. The method used was to transform the usual debtor-creditor relationship between the lessor and the lessee into one of trust relationship, by operation of law. The security deposit paid over and held in this State was the thing to be protected. * * * The need for protection is obviously no less, but rather more, when the land to which the lease relates is situated ouside of this State. The Legislature did not expressly limit the statute to deposits made under a contract for the use or rental of real property situated in New York, and we do not think it should be thus limited by judicial construction. The protection afforded by section 233 should apply to funds deposited in New York as security under a contract of lease made in New York between corporations created by New York, even though the real property which is the subject matter of the contract is located elsewhere. In so holding, we are not giving extraterritorial operation to the statute, but, on the contrary, in accordance with the evident legislative intent, we are permitting it to govern the rights and liabilities of corporations created by New York, under a New York contract, with respect to a New York subject matter, viz., the security deposit."
As we mentioned, in that case we rejected the precise view which the majority now adopts as the basis for its conclusion, which view was stated in the dissenting opinion (per FULD, J.) in the Mallory Associates case as follows (p. 303): "* * * it is manifest that section 233 of the Real Property Law operates only upon moneys deposited as security under leases for land located in New York. We may start with the proposition that the legislature of this state, in enacting the Real Property Law and in adding provisions to it, was only interested in, and concerned with, property located within this jurisdiction. * * * If the legislature had intended to deal with real property situated outside of New York, it could easily have done so." We cannot understand how that dissenting view has become improved with the passage of time.
As we understand them, our brother Judges have also decided as they have out of an apprehension that only confusion could result from applying our statute to a payment made here for improvements of realty in another State which may have an entirely different statutory scheme. For ourselves, we fail to perceive such a result. We know of no confusion that has *308 developed as a result of the Mallory Associates case. Furthermore, the statute, as we construe it, would not interfere with, or affect, the statutory scheme or the real property of any State in the Union. First of all, as noted earlier, the statute does not affect real property anywhere. Secondly, what it does affect, viz., the fund in this State, could not possibly be impressed with a trust by the statutes of any other States, for they would have no jurisdiction. Thus, to hold as the majority do, leaves unprotected the payment itself which rightfully belongs to the laborer and the materialman. We are unable to conclude that our Legislature intended to withhold protection from certain payments.
The lien provisions of the Lien Law have justification for their existence only insofar as they protect and preserve the rights of certain classes of persons such as laborers and materialmen. As the court said in Standard Sand & Gravel Co. v. City of New York (172 App. Div. 80, 83, affd. 224 N.Y. 687): "The history of the Lien Law and its development shows a great and constantly increasing degree of consideration by the Legislature for the claims of laborers and materialmen * * *." In the face of this legislative concern for materialmen and laborers, and we assume that that concern is for all of them, we are now holding that only those who devote their energies, skills and materials to the improvement of domestic realty may have the protection of the statute.
There are no words of limitation, territorially speaking, in section 36-b. As it reads, it applies to all funds received by a subcontractor from an owner, contractor or subcontractor "for the improvement of real property". The statute is clear and free from ambiguity. Indeed, no charge is made that the section is unclear or equivocal. In the last analysis, the contention is that the Legislature could not have intended all that its words import. The respondent argues that since the trust provisions of section 36-b are a part of the Lien Law, under the portion relating to mechanics' liens, and since the Lien Law generally applies only to local realty, the same limiting condition must be read into section 36-b. We are clear that no such condition must, or should, be read into the section because it is part of the Lien Law. In the first place, the mechanics' portion of the Lien Law is probably the only logical place for the insertion of this provision since it deals in great part with the rights of *309 a class of persons who would also be entitled to a mechanics' lien. The purpose of the section being to protect and benefit materialmen and laborers (Pick Co. v. Travis, 6 F.Supp. 486), it is quite natural that this section should be placed among those statutes whose purpose is similar. However, similarity is not identity in every particular. The provisions of the Lien Law generally are limited to local realty because the scope of the lien remedy is, in its nature, circumscribed by the State's boundaries. The enactment of legislation creating rights by way of lien is an expression and exercise of a State's power to affect directly realty within its borders. The object of the lien is the real estate, and jurisdiction exists therefore only to the extent that the basis thereof lies within the sovereign domain. But section 36-b does not confer rights by way of lien. As noted earlier, this section confers rights not in real property, but in funds paid to a subcontractor for improvements in realty. It is the fund which the section affects, and in respect to which the Legislature intended to confer rights. The purpose of the Lien Law is not to burden property simply for the sake of burdening property. Its function is to assist various classes of persons in the preservation and enforcement of their rights, and the concept of lien is merely a means to that end. By the same token, the concept of trust expressed by section 36-b (and others), enforcible under article 3-A, is designed to effectuate this same result. Thus, the purpose of both remedies is to insure as far as possible, within their lawful scope, the payment of claims of those contributing to the improvement of realty. These provisions of the so-called Lien Law must be "construed liberally to secure the beneficial interests and purposes thereof." (Lien Law, § 23; see, also, Corbin-Kellogg Agency v. Tasker, 248 App. Div. 58, 60). We think it is not possible to remain faithful to this legislative command, and yet adopt the limited construction of the majority.
The Law Revision Commission, when it proposed the enactment of article 3-A and various other amendments to the trust fund provisions of the Lien Law, pointed out that those provisions supplement the older remedy by lien (1942 Report of N. Y. Law Rev. Comm., p. 283). The entire trust concept, as it is contained in the so-called Lien Law, is founded on the principle that funds which are received for the improvement of real property should be applied first to the payment of the *310 cost of the improvement. (Ibid.) In recommending passage of article 3-A, the commission observed that: "There is no valid reason why a fund impressed with a trust for payment of the cost of improvement should not be available to all those who have contributed to the improvement." (Id., p. 284.) The purpose of the Legislature being to secure to a class of persons payment for their expenditures of labor and material, it would be inconsonant with that purpose to unnecessarily shackle one remedy with the inherent weaknesses and limitations of another. Both remedies, lien and trust enforcement, were enacted to accomplish that result, and consequently the legislative purpose must be given effect to the full measure of the language it chose, unhampered by restrictions it did not impose.
Section 36-b impresses a trust upon funds received by a subcontractor for the improvement of real property. It is the respondent's position that the term "real property" as used throughout the Lien Law has always been construed to mean local realty, and that, therefore, "* * * it is inconceivable that the Legislature would overthrow firmly entrenched definition, without a word, to create an obvious dichotomy in which `real property' would mean all property for trust fund purposes, but only local property for lien * * * purposes." (Resp. Brief, p. 10.) Respondant further points out that, within the trust provisions themselves, there would be duality of definition since public property, also affected, is limited by section 2 of the Lien Law to local realty. Consequently, it is urged that to permit section 36-b to apply to nonlocal realty would lead to an incongruous result and utterly obliterate "the uniform harmonious approach of the Lien Law, possible only if limited to New York realty." We are unable to appreciate the catastrophe apprehended by the respondent. The only pattern which we perceive in the so-called Lien Law is the consistent and uniform legislative purpose throughout to protect certain classes of persons in their rights arising out of contributions to the improvement of realty. This pattern remains intact only by giving full effect to the language of the statute in obedience to section 23 requiring a liberal construction of the beneficial provisions of the Lien Law. As for the argument that if the Legislature intended section 36-b to apply to nonlocal realty, it would have expressly so provided, it is enough to say that it was not so obliged, and it did not need to *311 so provide (Mallory Associates v. Barving Realty Co., 300 N.Y. 297, 302, supra). The Legislature chose its language and was of course aware of the scope and meaning thereof. There being no ambiguity, and a literal application being entirely in accord with the general legislative purpose to aid materialmen and laborers, no occasion for a limiting construction exists. (See New Amsterdam Cas. Co. v. Stecker, 3 N Y 2d 1, and cases cited therein.) Moreover, the definition of "real property" and "improvement" contained in section 2 (which would be the logical place for limiting the law to New York real property only had that been the legislative intent) are broad and all-inclusive with no reference to the location of the property.
There is a clear separation in the Lien Law between the article relating to enforcement of trusts and the article relating to enforcement of liens.
Article 3 is entitled:
ENFORCEMENT OF LIENS ON REAL PROPERTY
Article 3-A is entitled:
ENFORCEMENT OF TRUSTS.
Both remedies are geared to the enforcement and preservation of the rights of various classes of contributors to the improvement of realty. We are well aware of the considerable amounts of work performed by contractors and subcontractors on real property situated without the State. As stated in Ridgefield Supply Co. v. Rosen (1 Misc 2d 675, 679, per EDER, J.): "If defendant's contention were to be adopted, and no remedy be held available under our Lien Law because the property improved was in another State, a contractor might with impunity divert funds received for such improvement in New York. New York contractors do, of course, considerable work on property in other States and, quite often, for New York owners of such property. If prosecution and a civil trust action could not be had under New York law because the property was in another State, and prosecution and a civil trust action deemed unavailable under the law of that State because the fund was received and diverted in this State, the evident purpose of the statutory enactments of both States to protect laborers and materialmen would be in such a situation completely nullified. The only sensible interpretation is that this trust fund remedy is intended to apply, and does apply, to funds received in this *312 State by a contractor to be used for the improvement of property wherever situated."
As we view it, the decision here made is an unwarranted restriction upon the benefits intended to be conferred by the Legislature upon the laborers and materialmen of this State. The Legislature was well aware of the numerous improvements of foreign realty which are the product of the labor and materials of New Yorkers. It is impossible for us to find a legislative intent to the effect that only a part of the laboring citizenry is entitled to the protection of its statute.
The judgment should be reversed.
Judgment affirmed.