**In the Matter of Edward S. SMITH, Bankrupt.**

**Rothkopf Associates, Inc., Appellant, Morris Ploscowe, Trustee in Bankruptcy, Appellee.**

**No. 125, Docket 25178.**

United States Court of Appeals Second Circuit.

Argued Jan. 14, 1959.

Decided Feb. 5, 1959.

Jacques J. Katz, New York City (Edward Norwalk and Michael C. Gray, New York City, on the brief), for appellant.

Edgar H. Booth, New York City (Booth, Lipton & Lipton, New York City, on the brief), for appellee.

Before MEDINA, LUMBARD and BURGER, Circuit Judges.

MEDINA, Circuit Judge.

This case involves an interesting legal jig saw puzzle arising out of an application by the trustee in bankruptcy of Edward S. Smith to direct Rothkopf Associates, Inc., Smith's landlord, to pay over the sum of $500 allegedly received by Rothkopf for the bankrupt's account eighteen days after the adjudication of bankruptcy. The Referee in Bankruptcy denied the motion, but he was overruled by the District Court. Rothkopf appeals.

On September 23, 1953 Lena Albert leased certain store premises in Ellenville, New York, to Smith, who deposited with the landlord $500 as security, in accordance with the following clause of the lease:

"24. The Tenant has deposited with the Landlord the sum of Five Hundred ($500.00) Dollars, as security for the faithful performance by the Tenant of all of the terms and conditions forming the subject matter of this lease. The Landlord shall, upon the completion of the tenancy herein, and provided the Tenant has complied with all of the terms and conditions herein, repay to the Tenant the said sum of Five Hundred ($500.00) Dollars, by permitting the Tenant to apply the said sum of Five Hundred ($500.00) Dollars to the payment of the last two (2) months of rental remaining under the term of this lease."

Lena Albert died and on March 12, 1956 her executors conveyed the premises,

subject to the lease, to Rothkopf. Until the bankrupt got into financial difficulties in early 1957 the $500 deposit had evidently slipped out of the minds of all concerned. We must take it as a fact that Lena Albert innocently commingled the $500 with her other funds in violation of Section 233 of the New York Real Property Law.[1] And at the closing of title on the sale to Rothkopf the $500 was not paid to Rothkopf, nor was any allowance therefor made in the closing statement. Shortly prior to April 7, 1957, at the request of the bankrupt, Rothkopf gave the bankrupt credit on its books for the $500 against and in liquidation of the bankrupt's obligation to pay rent for February, March and part of April, 1957 at $225 per month. On May 3, 1957 Smith was adjudicated a bankrupt and, on May 21, 1957, the executors of the Lena Albert estate paid $500 to Rothkopf.

By tracing the various transactions step by step, pausing to consider the legal effect of each step in sequence, we have arrived at what we consider to be the correct answer to the question before us, as to whether or not the payment to Rothkopf was for the account of the bankrupt. Upon payment to Lena Albert the $500 constituted a fund held in trust for the purposes described in paragraph 24 of the lease, with the bankrupt possessing a defeasible beneficial ownership therein. Upon commingling, in violation of the statute, the trust *res* disappeared, but the effect of the commingling was not to destroy all vestiges of the terms of the trust and give Smith an indefeasible and absolute right to recover $500 from Lena Albert. True, had he known of the commingling it is possible that he might

have sued to recover that amount, Sommers v. Timely Toys, Inc., 2 Cir., 1954, 209 F.2d 342; Mallory Associates v. Barving Realty Co., 1949, 300 N.Y. 297, 90 N.E.2d 468, 15 A.L.R.2d 1193; 2300 Ferguson v. Vaughan Imported Cars, Inc., App.T., 1st Dep't, 1957, 9 Misc.2d 188, 163 N.Y.S.2d 884; 2300 Concourse Realty Corp. v. Klug, Mun.Ct., 1952, 201 Misc. 179, 111 N.Y.S.2d 168. But since the lease had still a substantial portion of its term to run, Lena Albert could and would doubtless have defeated any recovery by correcting this inadvertent violation of N. Y. Real Property Law, § 233 during the pendency of the suit. See 160 Realty Corp. v. 162 Realty Corp., Sup.Ct.1952, 113 N.Y.S.2d 618, affirmed without opinion, 1st Dep't, 1952, 280 App.Div. 762, 113 N.Y.S.2d 678; Bridge Hardware Co. v. Mayer, Sup.Ct.App.T., 1st Dep't, 1954, 131 N.Y.S.2d 823; 19 North Village Realty Corp. v. Kominos, 1956, 3 Misc.2d 768, 155 N.Y.S.2d 318. Thus the most that can be said for Smith's right at and after the time of the commingling is that he had a defeasible chose in action, subject to extinction by the restoration of the deposit and the curing of the commingling. Perhaps we can say the trust was dissolved subject to reinstatement. At all events, it is clear that Smith's chances of getting back the $500 free and clear prior to the bankruptcy were just about nil. We are not called upon to decide nor do we pass upon the nature and existence of any claim the trustee in bankruptcy might have had against Rothkopf or anyone else had the transaction consummated by the book entry of April 7, 1957 not taken place. See Sommers v. Timely Toys, Inc., 2 Cir., 1954, 209 F.2d 342.

1. New York Real Property Law, McKinney's Consol.Laws, c. 50, § 233 provides:
"Whenever money shall be deposited or advanced on a contract for the use or rental of real property as security for performance of the contract or to be applied to payments upon such contract when due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same, but may be disposed of as provided in section thirteen hundred and two-a of the penal law. Any provision of such a contract whereby a person who so deposits or advances money waives any provision of this section is absolutely void."

Upon the sale, Rothkopf became responsible for the application of the $500, in accordance with the terms of the lease, even though the $500 deposit had not been transferred to Rothkopf. Walker v. 18th Street Holding Corp., 1st Dep't, 1943, 267 App.Div. 141, 44 N.Y.S.2d 866; Shenk v. Brewster, 1st Dep't, 1919, 189 App.Div. 608, 179 N.Y.S. 147. This obligation would have persisted even if Lena Albert's executors had deliberately exercised their option to continue as trustee of the deposit, in accordance with the terms of N. Y. Penal Law, McKinney's Consol. Laws, c. 40, § 1302–a,[2] instead of inadvertently neglecting to transfer it to Rothkopf at the time of the sale.

The April 1957 transaction must be evaluated in the light of the legal relationships just discussed. As Rothkopf was under an obligation to apply $500 in accordance with the terms of the lease, and this obligation ran in Smith's favor, the contract with Smith to credit the $500 against and in liquidation of the rent due for February, March and part of April, 1957, was a valid contract for a proper consideration. The effect of this contract was to cancel Smith's obligation to pay rent for February, March and part of April, 1957, on the one hand, and to cancel the obligation of Rothkopf, on the other hand, to apply the $500 or any $500 for the benefit of the tenant in accordance with the terms of the lease, thereby transferring the beneficial ownership of the trust from Smith to Rothkopf. Accordingly, the existence or nonexistence of a right in Rothkopf to compel payment of $500 to it by the Lena Albert estate is not material to the solution of our problem.

The court below concluded—and we think erroneously—that upon the commingling by Lena Albert, Smith had an absolute right immediately to recover the deposit, and hence that any "assignment" of the deposit in April, 1957 was made without knowledge of that fact, and, therefore, would not be inferred by the court. Aside from the dubious character of such a right, as above noted, we cannot see how the bankrupt's possible failure to understand the full extent of his rights—through no fault of Rothkopf—can affect the validity of the contract of cancellation. Smith knew he had an interest in the deposit worth no more than $500 and his contract with Rothkopf reflected that value. The contract of cancellation was not unfair to Smith. Any ignorance of his rights under which he may have labored was not unduly taken advantage of. Thus the $500 paid by the Lena Albert estate to Rothkopf on May 21, 1957 properly liquidated the trust and cannot be regarded

2. N.Y.Penal Law, § 1302–a provides:
"1. Any person, firm or corporation and the employers, officers or agents thereof, whether the owner or lessee of the property leased, who or which has [or] hereafter shall have received from a tenant a sum of money or any other thing of value as a deposit or advance of rental as security for the full performance by such tenant of the terms of his lease, or who or which has or shall have received the same from a former owner or lessee, shall, upon conveying such property or assigning his or its lease to another, or upon the conveyance of such property to another person, firm or corporation by a referee in an action to foreclose a mortgage thereon, at the time of the delivery of the deed or instrument of assignment, or within five days thereafter, or within five days after the making and entry of an order of the court discharging the receiver, deal with the security deposit in one of the three following ways:
"A. Turn over to his or its grantee or assignee, or to the purchaser at the foreclosure sale the sum so deposited, and notify the tenant by registered mail of such turning over and the name and address of such grantee, assignee or purchaser.
"B. Return the sum so deposited to such tenant or to his appointee or designee duly authorized in writing by such tenant to receive the same.
"C. Retain the sum so deposited and notify the tenant by registered mail of such conveyance or assignment and the name and address of the grantee, assignee, or purchaser at the foreclosure sale, as the case may be, and of the fact that he or it, as such former landlord, has retained the sum so deposited."

as a payment "for the bankrupt's account."

The judgment of the District Court is reversed and the proceeding remanded for confirmation of the order of the Referee in accordance with this opinion.