**FORE IMPROVEMENT CORPORATION, Appellant,**

v.

**George R. SELIG, Trustee-Appellee.**

**In the Matter of TRU–SEAL ALUMINUM PRODUCTS CORP., Bankrupt.**

**No. 119, Docket 25687.**

United States Court of Appeals Second Circuit.

Argued Jan. 6, 1960.

Decided May 3, 1960.

I. Robert Bassin, Jamaica, N. Y., for trustee-appellee.

Jacob Oliner, New York City (Gustave H. Zwerling, Hempstead, N. Y., on the brief), for appellant.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge.

This is an appeal from an order directing appellant, Fore Improvement Corporation (the landlord), to turn over to the trustee in bankruptcy (appellee), $1,750, which had previously been deposited as security by the bankrupt, Tru-Seal Aluminum Products Corp. (the tenant), under a written lease between it and appellant.

The lease was executed on November 19, 1955, on which date the deposit was received by the landlord as security. The tenant failed to pay rent for the months of December 1957 and January 1958. The landlord by court process was awarded possession of the premises on February 13, 1958. On March 4, 1958, a default judgment against the tenant for arrears of rent and damages in the amount of $3,012.82 was entered in the District Court of Nassau County. On March 10, 1958, an involuntary petition in bankruptcy was filed and on April 11, 1958, the tenant was adjudged a bankrupt. Appellant concedes that at all times the $1,750 has been deposited in its general bank account, in violation of section 233, New York Real Property Law.[1]

The appellee purporting to assert the tenant's rights to the deposit sought an order directing appellant to turn over the deposit to him. The Referee so directed and the district court confirmed the order. The question now before the court is whether the appellant may set-off its creditor claim upon the judgment for unpaid rent against the trustee's claim for the return of the deposit.

Section 233 provides that any rent deposit "shall continue to be the money of the person making such deposit"; it "shall be held in trust"; "shall not be mingled with the personal moneys" or "become an asset of the person receiving the same." The trust character of the deposit is thus clearly established. If commingled, a trust is still created by operation of law.

[1]. "§ 233 [49 N. Y. Real Property Law § 233]

"Whenever money shall be deposited or advanced on a contract for the use or rental of real property as security for performance of the contract or to be applied to payments upon such contract when due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same, but may be disposed of as provided in section thirteen hundred and two-a of the penal law. Any provision of such a contract whereby a person who so deposits or advances money waives any provision of this section is absolutely void."

Little benefit is gained by speculating on the legal consequences of steps not taken by the parties. New York cases indicate that commingling would give rise to an action for conversion (Mallory Associates v. Barving Realty Co., 1949, 300 N.Y. 297, 90 N.E.2d 468, 15 A.L.R.2d 1193; 2710 Eighth Ave., Inc. v. Frank Forman Pharmacy, Inc., 1943, 180 Misc. 376, 42 N.Y.S.2d 887). There was no such action. When the rent was in arrears and the landlord commenced an action therefor, a set-off might have been pleaded but no such defense was interposed. Only after bankruptcy were there any proceedings directed towards the deposit calling for any declarations of its legal status. Then, and only then, was the question of the effect of possible mutual obligations raised. But the right to set-off is determined by the provisions of section 68 of the Bankruptcy Act,[2] notwithstanding the fact that the obligations involved are creatures of state law.[3] And it is clear that the requirement of mutuality in section 68 precludes set-off where the party asserting it holds in trust the funds sought by the trustee in bankruptcy.[4] "In general where the liability of the one claiming a set-off arises from a fiduciary duty or is in the nature of a trust, the requisite mutuality of debts or credits does not exist, and such person may not set off a debt owing from the bankrupt against such liability" (4 Collier, Bankruptcy (14th ed.) 726). The rationale of this rule is simply that the liability arising from a fiduciary duty is entirely independent of the debt owing from the bankrupt. Cf. Topas v. John MacGregor Grant, Inc., 2 Cir., 1927, 18 F.2d 724, 52 A.L.R. 807. There is no mutuality because the indebtedness is "all on the side of" the bankrupt, Libby v. Hopkins, 104 U.S. at page 309, supra, note 4; the trust *res* is not owing to the bankrupt's estate but rather is owned by it. Since section 233 makes the landlord a trustee by operation of law, appellant does not qualify under the set-off provisions of the Bankruptcy Act. Sommers v. Timely Toys, Inc., 2 Cir., 1954, 209 F.2d 342.

Appellant argues that the trust relationship exists only while the deposit is kept separate and that upon commingling "the trust [is] dissolved subject to reinstatement" (In re Smith, 2 Cir., 1959, 263 F.2d 153, 155); hence, the conversion of the trust assets alters the relationship to that of debtor and creditor. Thus, contends appellant, there are offsetting debor-creditor claims. However, the existence of a chose in action for conversion does not create a creditor status.

Appellant also argues that it is anomalous for the district court to disallow a set-off here, when the New York courts will grant a set-off of rent due in an action brought by the tenant to recover the commingled deposit. Pollack v. Springer, 1949, 196 Misc. 1015, 95 N.Y.S. 2d 527.[5] Moreover, it is pointed out that

2. 11 U.S.C.A. § 108. Section 68, sub. a provides that "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

3. McCollum v. Hamilton National Bank, 1938, 303 U.S. 245, 58 S.Ct. 568, 82 L. Ed. 819; Frank v. Mercantile National Bank, 1905, 182 N.Y. 264, 74 N.E. 841.

4. Western Tie & Timber Co. v. Brown, 1905, 196 U.S. 502, 25 S.Ct. 339, 49 L. Ed. 571; Cook County National Bank v. United States, 1882, 107 U.S. 445, 2 S. Ct. 561, 27 L.Ed. 537; Libby v. Hopkins, 1881, 104 U.S. 303, 26 L.Ed. 769; United States v. Roth, 2 Cir., 1948, 164 F.2d 575; Lehigh Valley Coal Sales Co. v. Maguire, 7 Cir., 1918, 251 F. 581; Morris v. Windsor Trust Co., 1914, 213 N.Y. 27, 106 N.E. 753. See Comment, Bankruptcy: Mutuality as a Requirement for Set-Off, 28 Calif.L.Rev. 606, 614 (1940).

5. It is not altogether clear that Pollack v. Springer represents the prevailing view in New York at the moment. In a recent lower court decision summary judgment was granted the prospective lessee, the court stating, "it [the deposit] may not be used by the depositee as either a forfeiture, liquidated damages or an offset," and citing Sommers v. Timely Toys, Inc., supra. Freedman v. Washington

at any time prior to the commencement of the action, by the simple ceremony of setting apart necessary to correct an earlier commingling the landlord's right to security might have been revived. 160 Realty Corp. v. 162 Realty Corp., Sup., 113 N.Y.S.2d 618, affirmed 1952, 280 App.Div. 762, 113 N.Y.S.2d 678. But this ceremony was not performed; the deposit remained commingled.

Section 233 is emphatic in its language and is declarative of the public policy of New York State in prohibiting the commingling of rent security deposits. The statute may appear to be highly technical but such statutes frequently have to be literally construed to obtain the desired compliance. Nor is it of any moment that New York law may permit set-off where the tenant seeks to recover his deposit. As noted above, federal law determines the right, if any, to set-off in an action brought by a trustee in bankruptcy. Congress has the power to create the governing rule for the rights and obligations that stem from actions affecting bankrupt estates.[6] Section 68 of the Bankruptcy Act represents an exercise of such power. Compare Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 and D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 1942, 315

U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956, with Austrian v. Williams, 2 Cir., 1952, 198 F.2d 697, certiorari denied 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701. The determination of set-off would seem to be intimately related to the distribution of the bankrupt's assets, the essential basis for federal concern. Appellant, seeking to retain the rent deposit to extinguish *pro tanto* its judgment for unpaid rent, thereby asserting a set-off, is, in effect, seeking a priority and hence is barely distinguishable from the adverse claimant who "submits himself to the jurisdiction of the bankruptcy court to resolve certain equities among the claimants which have special relevance in the context of distribution in insolvency." Hill, The Erie Doctrine in Bankruptcy, 66 Harv.L.Rev. 1013, 1046 (1953). Furthermore, aside from its obligation to apply federal law, a New York court might incline toward a different view where a trustee brings the claim as opposed to a tenant suing in his own right. The trustee in bankruptcy represents the totality of the bankrupt's creditors, a group into which the landlord here should fall without a preference since, by virtue of the section 233 violation, it failed to obtain for itself the rights thereunder which compliance would have bestowed.

Affirmed.

Square Management Corp., 1959, 19 Misc. 2d 46, 187 N.Y.S.2d 888, 892.

**6.** That this proposition is correct in all its ramifications is apparent if the view of Mr. Justice Frankfurter that all controversies pertaining to the bankrupt estate arise "under 'the Laws of the United States,'" is accepted. See National Mutual Ins. Co. of District of Columbia v. Tidewater Transfer Co., 1949, 337 U.S. 582, 652, at note 3, 69 S.Ct. 1173, 1198, 93 L.Ed. 1556 (dissenting opinion). Others qualify somewhat the outer limits of Congressional power over cases dealing exclusively with state-created rights. Professor Wechsler rationalizes the grant of federal jurisdiction for plenary suits brought by the trustee on the theory that the bankrupt's creditors comprise a federally-protectible interest and hence that interest is provided with a federal forum to the extent that Congress can substan-

tively determine its rights. See Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp.Prob. 216, 224–225 (1948); Hart & Wechsler, The Federal Courts and The Federal System, 371–72, 744–46 (1953). Professor Mishkin believes that any conceivable sequela of a federal ingredient (i. e., something grounded in Art. I of the Constitution, in this case a bankruptcy distribution) may be heard by the federal courts but doubts that, as to some of the legal relations only remotely connected with the ingredient, there exists a coextensive legislative authority. See Mishkin, The Federal "Question" in the District Courts, 53 Col.L.Rev. 157, 184 et seq. (1953). All would agree, however, that the exercise of federal power applicable to the instant suit is a proper one. Regulation of the right to set-off in no way impinges upon the validity of the underlying claims.

FRIENDLY, Circuit Judge (concurring).

Appellant's contention is that whether the trustee's claim for the $1,750 deposit and appellant's claim under its judgment against the bankrupt are "mutual debts or mutual credits" should be determined as the New York courts would determine this and that New York would hold the claims "mutual debts" in the practical sense of allowing the latter to be set off against the former. I agree with appellant's first proposition; but I join in the judgment of affirmance because I do not think appellant has established the second.

Appellant's first proposition raises an issue which the courts do not seem as yet to have been required to decide. Under the new "way of looking at law" embodied in Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, see Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 101, 65 S.Ct. 1464, 1466, 89 L.Ed. 2079, is the question whether two claims, both created by the state of the bankrupt's residence, are "mutual debts or mutual credits," to be determined as the state court would do or by the federal court on the basis of views with respect to setoff arrived at on general theories as to what constitutes a debt, see Libby v. Hopkins, 1881, 104 U.S. 303, 26 L.Ed. 769, independently of the law of the particular state? See, generally, Hill, The Erie Doctrine in Bankruptcy, 66 Harv.L.Rev. 1013 (1953). I should suppose the former, where, as here, no policy of the Bankruptcy Act would be offended by treating the trustee in the same way the bankrupt would have been treated in a state court. Of course, any allowance of a setoff works a financial advantage, and in that general sense a preference, to the creditor who obtains it; but I cannot think this offends the Bankruptcy Act if the state that created the claims would have permitted a setoff *dehors* insolvency proceedings.

Of course, Congress is not required to direct the federal courts to look to state law for the definition of state-created rights asserted in bankruptcy, as it is when federal jurisdiction rests solely on diversity of citizenship. The question is of intent, not of power. The Bankruptcy Act must be read today in the light of the policy of Erie and the 1948 revision of the Judicial Code, 28 U.S.C. § 1652, wherein the application of the Rules of Decision Act, previously 28 U.S.C. 1940 ed. § 725, was expanded to include all "civil actions in the courts of the United States" rather than only "trials at common law." Absent any overriding bankruptcy policy, it seems to me far more likely that Congress would wish the "mutuality" of state-created claims to be determined by reference to the law that gave them birth than by an attempt to ascertain "what Reason, and therefore Law, required wholly independent of authoritatively declared State law * * *" Guaranty Trust Co. of New York v. York, supra, 326 U.S. at page 102, 65 S.Ct. at page 1466.

I find no controlling authority to the contrary. McCollum v. Hamilton National Bank, 1938, 303 U.S. 245, 58 S.Ct. 568, 82 L.Ed. 819, argued on the same day as Erie and decided two months earlier, dealt with an attempt to set off a state-created against a federally-created claim; clearly the nature of the latter was federal law and the case is thus not an authority against appellant even if we were to make the unrealistic supposition that the full implications of Erie were understood while it was still in the womb. Prudence Realization Corp. v. Geist, 1942, 316 U.S. 89, 97, 62 S.Ct. 978, 983, 86 L.Ed. 1293, held that a New York rule of subordination based on general equitable considerations, "a general rule of law governing insolvency proceedings," would not prevail against the general bankruptcy rule of equality; there was no indication that a bankruptcy court should refuse to recognize state decisions characterizing the nature of the right apart from insolvency proceedings. Vanston Bondholders Protective Committee v. Green, 1946, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162, related

to the consequences of an order forbidding the payment of interest upon unpaid interest; allowance of this was held improper, despite state law, because "under the circumstances shown by this case [it] would not be in accord with the equitable principles governing bankruptcy distributions." 329 U.S. at page 163, 67 S.Ct. at page 240. If New York should consider the landlord's sin in commingling the deposit with his general funds, contrary to the command of § 233 of the Real Property Law, not to be so irredeemable as to prevent his applying the deposit against unpaid rent, as it was intended to be, I can see no basis for a federal bankruptcy court's insisting on a more rigorous construction of the New York statute creating the trust relationship than New York would give. Such a holding by the New York courts would not be "a general rule of law governing insolvency proceedings," but a definition of the relationship created by § 233, outside insolvency as well as within it.[1]

However, I find no sufficient indication that New York would have allowed the landlord to make a set-off here. Appellant's contention that it would rests solely on Pollack v. Springer, 196 Misc. 1015, 95 N.Y.S.2d 527 (Supreme Court, Appellate Term, 1st Dept.1949). The court which rendered that decision stands two levels below the highest court of the state and the decision is without supporting reasons. The research of my brother Moore has unearthed a recent decision of a lower New York court, Freedman v. Washington Square Management Corp., 19 Misc.2d 46, 187 N.Y.S. 2d 888 (Municipal Court of New York City, 1959), which looks the other way although without mention of Pollack v. Springer. So long as the indication from the New York courts on the precise point remains thus dubious, I would

consider that the general New York rule, announced by one of its greatest judges, prohibiting "A wrongdoer who has misapplied the subject of a trust" from applying "a credit that belongs to him in his own right in cancellation of his liability as a fiduciary," Morris v. Windsor Trust Co., 1914, 213 N.Y. 27, 29–30, 106 N.E. 753, 754 would have prevented the landlord's set-off in the New York courts on the facts here, Pollack v. Springer to the contrary notwithstanding. See the references in Hart and Wechsler, The Federal Courts and the Federal System, 629–30. And so I reach the same conclusion as my brothers, although by a somewhat different route.

---

1. Sommers v. Timely Toys, Inc., 2 Cir., 1954, 209 F.2d 342, did not raise this issue. There the District Court had allowed the landlord to set-off the converted deposit against rent owing at the date of the petition, D.C.E.D.N.Y.1953, 110 F. Supp. 844, 847, and the trustee had not

appealed from that allowance. The appeal which we rejected was by the landlord, from the District Court's refusal to permit him to retain the balance against a wholly speculative claim for future damages.