In the Matter of PAL-PLAYWELL, INC., Bankrupt,

Leonard Siegel, Trustee-Appellant,

William Saloy and Herbert J. Clark, Appellees.

No. 395, Docket 28620.

United States Court of Appeals Second Circuit.

Argued April 7, 1964.

Decided July 13, 1964.

---

390

Samuel A. Arutt, New York City (Handelsman, Arutt & Knox and Charlotte P. Arutt, New York City, of counsel), for trustee-appellant.

Eli N. Horin, Jamaica, N. Y., for appellees.

Before LUMBARD, Chief Judge, and MOORE and SMITH, Circuit Judges.

MOORE, Circuit Judge:

The Trustee in Bankruptcy of Pal-Playwell, Inc. appeals from so much of an order of the District Court for the Eastern District of New York as reversed the order of the Referee in Bankruptcy granting summary judgment in favor of the trustee upon his counterclaim for the return of a lease security deposit. The facts are not disputed.

In 1959, Playwell Products, Inc. signed a fifteen year lease and deposited with the landlords $6,990 as security for the performance of the terms thereof. Thereafter, a written assignment of the lease and security was made to the bankrupt. The lease stated:

"The Tenant has this day deposited with the Landlord the sum of $6,990.00 as security for the full and faithful performance by the Tenant of all the terms, covenants and conditions of this lease upon the Tenant's part to be performed, which said sum shall be returned to the Tenant after the time fixed as the expiration of the term herein, provided the Tenant has fully and faithfully carried out all of said terms, covenants and conditions on Tenant's part to be performed * * *"

The rent due on August 1, 1962 was not paid and the landlords, on August 16, 1962, instituted non-payment summary proceedings. On August 22, 1962, the bankrupt filed a petition for an arrangement under Chapter XI of the Bankruptcy Act and on September 13, 1962 it was adjudicated a bankrupt. The trustee vacated the leased premises and on May 17, 1963 the landlords then moved for an order directing the trustee to pay use and occupation and rubbish removal in an amount not here disputed. The trustee counterclaimed to recover the $6,990 security deposit.

The Referee reasoned that since the security had not been applied towards the payment of the landlords' claim as of the date of the filing of the petition and since the New York statute (New York Real Property Law, McKinney's Consol. Laws, c. 50, § 233) declared that until so applied the money remained the property of the lessee, the landlords were not entitled to a set-off under section 68, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 108, sub. a.[1] Accordingly, he ordered the landlords to turn over the deposit to the trustee subject to an agreed amount for use and occupation, rubbish removal and cleaning. On the landlords' petition to review, the district court reversed the turn-over order.

The question posed on this appeal is whether the trustee may recover the bankrupt's security deposit. To defeat the landlords' right to apply the deposit to satisfy the bankrupt's contractual ob-

[1] Section 68, sub. a provides:
"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

ligations, the trustee argues that since section 233 made the landlords trustees of the deposit for the benefit of the bankrupt, there was no mutuality of debts and, therefore, there was no right to set-off under section 68a of the Bankruptcy Act. We agree with the district court that this argument is without merit.

■ The purpose of a lessee's deposit is clear, namely, "as security for performance of the contract * * *." N. Y. Real Property Law, § 233. That statute further provides that the money so deposited is to continue to be the money of the depositor until repaid or applied to payments due under the rental contract. Although section 233 states that the deposit shall not become an asset of the person (the landlord) receiving it and shall not be mingled with his personal moneys, the section does not abrogate the landlord's right to apply the fund whenever necessary to insure fulfillment of the lessee's contractual obligations. Despite the depositor's continued ownership, it is an ownership burdened by the landlord's right to hold and use the money when required to secure performance. Since the trustee could acquire no greater rights to the deposit than possessed by the lessee, he was not entitled to its return until the lessee had satisfied its obligations to the landlord. See In re Sherwoods, Inc., 210 F. 754, 760 (2d Cir. 1913).

■ The trust established by the provisions of section 233 operates to protect the lessee against misappropriation by the landlord of the funds deposited. See Mallory Associates, Inc. v. Barving Realty Co., 300 N.Y. 297, 301–02, 90 N.E. 2d 468, 471, 15 A.L.R.2d 1193 (1949); Pollack v. Springer, 195 Misc. 523, 91 N.Y.S.2d 847 (City Ct., Bronx Cty. 1949). That section provides, in relevant part:

"Whenever money shall be deposited or advanced on a contract or license agreement for the use or rental of real property as security for performance of the contract or agreement or to be applied to payments upon such contract or agreement when due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same * * *."

It is apparent that the statutory trust is aimed at the landlord who jeopardizes the lessee's eventual recovery of his deposit. That we are not dealing here with a trust in the conventional sense is made clear by the fact that the landlord may under the statute legitimately apply the deposit to damages he sustains due to the lessee's breach. Naturally, after the lessee has defaulted, no purpose is served by holding the funds in trust since the need to insure the availability of the deposit no longer exists.

■ We do not believe that the trust established by section 233 is such as to require us to defeat the landlord's otherwise clear right to set-off the deposit under section 68a, Oldden v. Tonto Realty Corp., 143 F.2d 916 (2d Cir. 1944). A holding to the contrary would contradict the plain intentions of the parties as well as undermine the purpose of the security arrangements and the applicable New York legislation. In Sommers v. Timely Toys, Inc., 209 F.2d 342 (2d Cir. 1954), the holding, if not the precise rationale upon which it proceeded, was unmistakable: a *commingling* landlord forfeited its right to a security deposit upon the lessee's bankruptcy. Sommers was adhered to in Fore Improvement Corp. v. Selig, 278 F.2d 143 (2d Cir. 1960), where the holding was similarly confined to a commingling landlord who sought to invoke the set-off allowed by section 68, sub. a. We noted there that the commingling landlord "by virtue of the section 233 violation * * * failed to obtain for itself the rights thereunder which compliance would have bestowed." 278 F.2d at 146. See also Tru-Seal Alu-

minum Prods. Co., 170 F.Supp. 902 (E.D. N.Y.1959), aff'd sub nom. Fore Improvement Corp. v. Selig, supra.

In the case at bar, the landlords fully complied with the New York legislation protecting the lessee and kept the deposit carefully segregated. To use that legislation so as to deprive the landlords of their contractual right to retain the deposit would be to distort its clear intendment. We agree with the district court that under these circumstances the landlords are entitled to set-off the security deposit.

Judgment affirmed.