Joseph A. Sabafite, J.
Motions numbered 47, 149 and 150 are hereby consolidated and determined.
The Attorney-General of the State of New York proceeding under subdivision 12 of section 63 of the Executive Law seeks an order (1) to restrain alleged “ fraudulent and illegal ” practices by the respondents in maintaining in a noninterest bearing account the tenant’s rent security deposits at the Parkchester apartment development located in Bronx County, and (2) to require respondents to place the deposits in an interest bearing account and to pay over the interest earned to the tenants on an annual basis.
Respondents move to dismiss the petition for failure to state a cause of action.
Subdivision 12 of section 63 provides that the Attorney-General may seek appropriate relief from the courts: “ "Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business ”. (Emphasis supplied.)
The underlying facts are that on December 2,1968, respondent Parkchester Apartments Co. bought the Parkchester apartment complex from Metropolitan Life Insurance Company for $90,050,000. This development has over 12,000 tenants. Metropolitan at the time of sale had about $1,200,000 in security deposits theretofore obtained from .the tenants. This money was in an interest bearing account in the First National City Bank, Parkchester branch. The terms of this account appear in a letter agreement dated July 11,1963, between Metropolitan and First National.
*1022 That agreement provides for an account for security deposits only, and states that the beneficial interest of security moneys shall be held — and ¡the interest earned thereon shall accrue — for the benefit of respective tenants, and also that Metropolitan will have only a security interest in such moneys to secure performance of the obligations of the tenants under their leases.
Every year thereafter First National, in accordance with the agreement, paid accrued interest at the rate of 4% directly to the 12,000 tenants entitled to it. This it did at its own expense.
On the date of sale, Metropolitan assigned the security accounts and all its rights under the letter agreement to Parkchester Apartments Co. Parkchester Apartments assumed all the obligations of Metropolitan in respect thereto.
The respondent Bank of Commerce, prior to the sale, negotiated for and received a lease for space in the Parkchester development, and moved in at the time of sale. Soon thereafter, respondent Parkchester Management Corp., which manages the Parkchester apartment complex for its owner Parkchester Apartments Co., opened a noninterest bearing account in the Bank of Commerce, Parkchester branch, entitled ‘ ‘ Parkchester Management Corp., Rent Security Account ”. The moneys of the tenants were transferred from First National to the Bank of Commerce, and placed in said security account.
On January 6, 1969, Parkchester Management Corp., by letter, gave notice to the Parkchester tenants of the transfer. (See requirement for statutory notice, General Obligations Law, § 7-105.) In addition, the letter notified the tenants that the new account was noninterest bearing.
Thereafter, upon the complaints of tenants, the Attorney-General conducted an investigation into the facts surrounding this transfer and in addition examined into the relationship between the Helmsley interests and the Bank of Commerce. This suit charging fraud in violation of subdivision 12 of section 63 followed.
The Attorney-General points to a number of acts by the respondents and concludes that they are subject to legal liability under subdivision 12 of section 63 for the manner in which they handled ¡the security. For example, he contends that the respondents in notifying tenants of the transfer of the moneys from one bank to another gave a less than candid explanation of the reason for discontinuing the interest bearing account when they stated that: “because * * * of. * * * increases in clerical and bookkeeping expenses * * * [it was] no longer feasible to retain these deposits in an interest bearing account. ’5
*1023 The Attorney-General contends that by the purchase agreement of December 2,1968 respondents bound themselves to leave the deposits in the same interest bearing state established by the prior landlord. He does not argue that section 7-103 of the General Obligations Law by itself alone imposed an obligation upon respondent landlord to keep the money at interest. He does contend, however, that it has an obligation different from that of other landlords because of the fact that the prior owner of the Parkchester property earned interest with the tenants’ security deposits and paid over the interest earned to the tenants annually.
Additionally, the Attorney-General maintains that under general principles of law — apart from the statute — respondents are obligated to earn and pay interest on the tenants’ security deposits because of the duties they owe their tenants as trustees of the tenants’ fund and that respondents’ obligation to use those funds productively is greater than their statutory duties under section 7-103.
The Attorney-General charges that the redeposit with the Bank of Commerce was made for mutual benefits received as follows: The bank obtained a favorable lease of desirable commercial space in Parkchester, a guaranteed influx of customers due to its status as rent collector for the new owner, and a $1,200,000 account in the form of tenants’ security deposits, bearing no interest; further that respondent Helmsley and his two business associates received unsecured loans, Helmsley’s loans totaling $1,350,000 and his associates’ over $400,000.
He contends that respondents’ actions were solely for mercenary reasons, and that by virtue of the transfer of the moneys they were allegedly able to obtain special considerations for themselves from the Bank of Commerce, at the expense of Parkchester tenants.
On the other hand the respondents maintain that they committed no deceptive or fraudulent or illegal act, that their only obligations are those set forth by statute and that they have not violated its provisions and further that the Attorney-General has no standing to bring this action.
The key issue here is the nature of the statutory obligations imposed on landlords under sections 7-103 and 7-1Ó5 of the General Obligations Law.
Section 7-103 provides in pertinent part as follows: “ 1. Whenever money shall be deposited ' * * * on a contract * * * for the * * * rental of real property as security for performance of the contract * * * such money, with interest accruing thereon, if any * * * shall be held in *1024 trust * * * and shall not be mingled with the personal moneys * * * of the person receiving the same, but may be disposed of as provided in section 7-105 ”. (Emphasis supplied.)
Section 7-105 deals with the obligation of a landlord with respect to rent security money upon conveyance of the property by him to another person. Under these circumstances a landlord must do one of three things: (a) Turn over the rent security money to his grantee, and notify the tenant as to the name and address of the grantee; or (b) return the security money to the tenant; or (c) retain the security money and notify the tenant of the conveyance and of the fact that he, as the former owner, has retained the money.
Section 7-103 was first enacted in 1935 as section 233 of the Real Property Law. Though later amended several times and repealed and re-enacted as part of the General Obligations Law, its original impact remains unchanged. Its net effect was to transform landlords holding security deposits from debtors into trustees (Mallory Assoc. v. Barving Realty Co., 300 N. Y. 297; People v. Harowitz, 309 N. Y. 426, 428; Matter of Perfection Tech.. Serv. Press [Cherno-Dale Car Realty Corp.], 22 A D 2d 352, 356, affd. without opn. 18 N Y 2d 644).
Obviously the obligations imposed upon a trustee under this statute are not to be confused with those imposed upon trustees in the conventional sense (see Matter of Pal-Playwell, 334 F. 2d 389, 391 [2d Cir.]).
Numerous bills — a number by the Attorney-General — have been introduced in the Legislature in recent years requiring landlords to place security moneys in interest bearing accounts, but failed of passage. (See, e.g., Assembly bill 1482, prefiled, Jan. 8, 1969, which would have also amended section 7-103 to permit landlords to deduct 1% of the security deposit for administrative expenses; for other bills see New York Legislative Record and Index.
It is quite clear from the statute that a landlord has no obligation to deposit rent security moneys in an interest bearing account (Stuarco, Inc. v. Slafbro Realty Corp., 30 A D 2d 80).
Turning again to the facts, the agreement between Metropolitan and the First National dated July 11, 1963 provided that Metropolitan would deposit in First National the security rent deposits of the Parkchester tenants and that the beneficial interests and any interest earned thereon would accrue for the benefit of the tenants. Metropolitan retained only a security interest in the amounts to secure performance by the tenants *1025 of their lease obligations. The agreement contained no stated time during which it would remain in effect. It could have been terminated by either Metropolitan or First National at any time. In the event of such termination, Metropolitan was free to place the rent deposits with any other bank of its own choice; either in an interest bearing account or noninterest bearing account. In this connection it is worth noting that some leases between Metropolitan and the tenants provided: “If the landlord receives no interest on such deposit, no interest will be paid by the Landlord.” Other leases were completely silent on the matter of interest.
The agreement of December 2, 1968 between First National, Metropolitan and Parkchester Apartments Co., the purchaser, was only an undertaking by the purchaser to take over for the tenants of Parkchester the security deposit amounts held under section 7-103 of the New York General Obligations Law. This was the obligation of Metropolitan which the purchaser assumed. Since Metropolitan was not obligated under the terms of its agreement with First National to keep the money in that bank in an interest bearing account in perpetuity, the agreement of December 2, 1968 imposed no such obligation upon the purchaser. No vested rights were created in the Parkchester tenants by the agreement of July 11, 1963.
It is quite clear that the Metropolitan had voluntarily chosen to have the deposits earn interest and was not compelled to do so by law.
Accordingly, the purchaser was free, both under the provisions of the General Obligations Law, and under the terms of the December 2,1968 agreement to transfer the security deposits to any bank of its choice and to place the deposits in either an interest bearing account or a noninterest bearing account.
Nor were respondents obligated to use the security deposits productively. That is clear under the statute. The statute is unequivocal: landlord is obligated to pay interest only ‘ ‘ if any ’ ’ interest accrues on the security.
Th Attorney-General’s contentions find no basis in the statutory scheme the Legislature has mandated for the regulation of security deposits and which only the Legislature can change. The court cannot legislate a new duty for landlords which the Legislature did not enact when it passed section 7-103 and which it has since refused to change.
Respondents followed the letter of the law. Obviously respondents’ action did not benefit the tenants and their chagrin is understandable. While this action does not invite judicial *1026 applause, neither may respondents’ conduct warrant the judicial condemnation sought by the Attorney-General under subdivision 12 of section 63 of the Executive Law.
There was no departure from any prior dealings between the Helmsley interests and the Bank of Commerce. It appears that the Helmsley interests and other enterprises affiliated with them have had a continuous banking relationship with the Bank long antedating the acquisition of the Parkchester property. Respondent Helmsley and the Helmsley-Spear group have opened numerous substantial deposit accounts with the bank. Apart from Parkchester, the bank has 12 to 15 security deposit accounts from the Helmsley-Spear interests, none of which is interest bearing. They were not strangers to each other.
The transfer of the rent security account to the Bank of Commerce» falls into a pattern established by 15 years of a mutually successful business relationship between the Bank of Commerce and the Helmsley interests and cannot be said to be an unexpected action.
Moreover, the evidence shows that no special favors were granted to Mr. Helmsley with respect to the rate of interest on loans made to him by the bank. He is currently paying the highest rate permitted by law for unsecured loans to individuals.
The lease by the Bank of Commerce of space in Parkchester cannot be considered sinister in the context of this proceeding. It was a normal business transaction, for a lease period and rental which cannot be held improper.
Finally, respondents maintain that the reason given ¡to tenants for discontinuing the interest bearing account was not proved to be false. Strictly speaking this is correct.
Aside from the legal insufficiency of the petition, the Attorney-General is without authority to maintain this proceeding. Hnder subdivision 12 of section 63 of the Executive Law, the Attorney-General is authorized to seek appropriate relief wherever persons “ engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business ”. The words 41 fraud ’ ’ and ‘ ‘ fraudulent ’ ’ as used in the statute are defined to include 41 any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionably contractual provisions ”.
This is a private dispute between landlord and tenants arising from the landlord’s single act of transferring the tenants’ security deposits to a noninterest bearing account. On the record here, there is no evidence of any fraud or illegality, let *1027 alone the persistent or repeated fraud or illegality required "by subdivision 12 of section 63 of the Executive Law. No “ artifice to defraud ” or any “ misrepresentation, concealment, suppression, etc.” was in any way involved in the transfer of the security account to the bank. There is no contractual responsibility upon the part of the purchaser to maintain the security deposits in an interest bearing account. Even if there were, the dispute would be limited to tenants of Parkehester and the purchaser. It would be a controversy in which the Attorney-General has no statutory authority. The only other possible basis for an action by the Attorney-General would be on the ground that any claimed breach of contract on the part of the purchaser amounted to an illegal act. A mere breach of contract, even if it existed, cannot constitute an illegal act.
In sum, then, if the tenants are to be afforded any relief it must come from the Legislature.
The motions are granted and the proceeding is dismissed.