Jasen, J. (dissenting).
In my view, both the text and the legislative history of the 1970 amendment to section 7-103 of the *966 General Obligations Law contemplate that all tenant security deposits, for the enumerated class of dwellings, be deposited in interest-bearing accounts. There can be no doubt that the original bill was introduced as a result of Special Term’s holding in Matter of State of New York v. Parkchester Apts. Co. (61 Misc 2d 1020, 1024, affd. 34 A D 2d 1106, affd. 28 N Y 2d 842) that the landlord, Parhchester Apts. Co., was under no legal obligation to maintain the tenants’ security deposits in an interest-bearing account. The explanatory memorandum attached to the proposed legislation described the bill as “making it mandatory that money deposited under a contract for the use or rental of real property as security be deposited in an interest-bearing account in a banking organization.” Likewise, the Governor, in his message of approval, stated, “ This bill, effective September 1, 1970, will require the landlord of every apartment house with six or more apartments to place any security deposits made by his tenants in an interest-bearing bank account. ’ ’
Considering the clear language of section 7-103 of the General Obligations Law, I find it difficult to see how the landlords can now claim that the statute, as amended, is not applicable to tenancies and renewals which commenced prior to the effective date of the amendment—September 1, 1970. Obviously, the Legislature intended to put an end to the nonsense of security deposit manipulation by landlords by requiring that all rent security be deposited in interest-bearing accounts. To construe the statute in any other way would clearly defeat the remedial purpose intended.
On the question of the Attorney-General’s standing to maintain this proceeding, I differ with the majority, in that I believe the Attorney-General has such standing, not only under section 63 (subd. 12) of the Executive Law, but also in the exercise of his common-law powers.
Section 63 (subd. 12) of the Executive Law specifically authorizes the Attorney-General to maintain a proceeding to restrain ‘ ‘ repeated fraudulent or illegal acts or * * * persistent fraud or illegality in the carrying on, conducting or transaction of business ”.
In Parkchester (61 Misc 2d 1020, affd. 34 A D 2d 1106, affd. 28 N Y 2d 842, supra), the leading case construing section 63 (subd. 12), Parhchester Apartments Co. purchased the Parkchester apartment complex from Metropolitan Life Insurance *967 Company. Parkchester Apartments Co. then transferred the tenants’ security deposits of about $1,200,000 from an interest-bearing account at First National City Bank to a non-interest-bearing account at the Bank of Commerce. The reason given to the tenants for this transfer was the cost of administering the interest-bearing accounts. The Attorney-General essentially argued that the trust created by statute required a landlord to keep security deposits in interest-bearing accounts if his predecessor did so. This argument of illegality was properly rejected. Special Term specifically found that “ the purchaser was free, both under the provisions of the General Obligations Law, and under the terms of the December 2, 1968 agreement to transfer the security deposits to any bank of its choice and to place the deposits in either an interest bearing account or a noninterest bearing account.” (61 Misc 2d 1020, 1025.) Absent illegality, there could hardly be the “ persistent illegality” necessary to satisfy section 63 (subd. 12). Thus, while there might have been fraud in the reason given the tenants for the transfer, this was, at most, a .single act—not repeated fraudulent acts or persistent fraud.
In my opinion, the present case differs from Parkchester in that the amendment to section 7-103 of the General Obligations Law has now made the landlord’s conduct—refusing to place the tenants ’ deposits in interest-bearing accounts — illegal. This factor was simply not present in Parkchester. Since the landlords have conceded that their trusteeship of such tenant security deposits is “in the carrying on, conducting or transaction of business,” under section 63 (subd. 12), the sole issue remaining is whether the illegality is of the “ persistent ” nature contemplated by the statute. I believe it is. The statute is expressly disjunctive —11 repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business ”. (Emphasis supplied.) The scope of the statute reaches beyond “ acts ” to encompass as well ‘ ‘ persistent * * * illegality in the carrying on * * * of business ”. This part of the statute covers precisely the passive illegality here involved. To read otherwise would be to render superfluous and disregard an express portion of the statutory language. It is the continuing nature of the illegality—the constancy and perseverance of the landlords in refusing to deposit into interest-bearing accounts these 3,500 *968 security deposits amounting to approximately $1,000,000—which makes the violations “ persistent ” under section 63 (subd. 12).
Moreover, “ [t]he discretion of the attorney general in determining what the public interests require as to bringing an action against a domestic business corporation or its officers has been considered to be absolute and hence not to be a proper subject of inquiry by the courts.” (7 Am. Jur. 2d, Attorney General, § 13, p. 17.) This was a consideration entirely absent in Parkchester, for there the Attorney-General sought standing without either a common-law or statutory violation upon which to predicate a violation of the public interest. Where, as here, the amendment to section 7-103 of the General Obligations Law renders, in my view, certain conduct illegal, I believe the determination by the Attorney-General that the public interest is threatened and that litigation should be commenced is beyond the discretion of the courts to review. (People v. Bunge Corp., 25 N Y 2d 91, 97; Gaynor v. Rockefeller, 15 N Y 2d 120, 131; People v. Ballard, 134 N. Y. 269, 293.)
Accordingly, I would reverse the order of the Appellate Division and reinstate the order of Special Term.
Order affirmed, etc.