The STATE OF NEW YORK,
Plaintiff-Appellant,

v.

Danny WHITE et al.,
Defendants-Appellees.

No. 148, Docket 75–7254.

United States Court of Appeals,
Second Circuit.

Argued Nov. 26, 1975.

Decided Dec. 29, 1975.

Jeremiah Jochnowitz, Asst. Atty. Gen., Albany, N. Y. (Louis J. Lefkowitz, Atty. Gen., and Ruth Kessler Toch, Sol. Gen., Albany, N. Y., on the brief), for plaintiff-appellant.

Nancy Stearns, c/o Center for Constitutional Rights, New York City, and Robert T. Coulter, Washington, D. C., on the brief, for defendants-appellees.

Hancock, Estabrook, Ryan, Shove & Hust, Syracuse, N. Y., on the brief, for Douglas L. Bennett, Bonnie L. Bennett and Big Moose Property Owners Ass'n, applicants for intervention-appellants.

Before LUMBARD, FRIENDLY, and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

The State of New York, appeals from a March 27, 1975 order of the Northern District, Port, J., dismissing for lack of subject matter jurisdiction its complaint to regain possession and "remove a cloud on plaintiff's title" to 612.7 acres of land in Herkimer County, New York, which it had acquired by deed dated August 7, 1973, for the sum of $783,000.

The genesis of the present controversy lies in events far in the past. Following the victory of the American colonies in the Revolutionary War, the Mohawk Indian Nation, which had sided with the British, migrated from New York to the more hospitable soil of Canada in an endeavor to avoid possible reprisals. Having received a grant from the King of England of 12,000 square miles in Canada in which to settle, the Mohawks entered into a treaty with the State of New York on April 27, 1798, by which they did

> cede and release to the people of the State of New York forever all the right or title of the said nation to lands within the said State; and the claim of the said nation to lands within the said State is hereby wholly and finally extinguished.

Included within the lands thus acquired by New York were the 612.7 acres in Herkimer County which, on August 27, 1798, the State patented to Alexander Macomb. As detailed in the plaintiff's complaint, the chain of title then passed through a succession of private owners until August 7, 1973 when the property was conveyed to the State by the Nature Conservancy for incorporation within the New York State Forest Preserve.[1]

The State's plans for the land were, however, seriously disrupted when forty-two members of the Mohawk Nation, defendants herein, seized possession of the property and the buildings thereon in May 1974, thus dramatically ending 175 years of silent acquiescence in non-Indian ownership. Proclaiming what they believed to be the Mohawk's aboriginal rights, defendants and others issued the so-called Ganienkeh Manifesto attacking the validity of the 1798 treaty from

---

1. The premises in question were conveyed to the Nature Conservancy by Robert F. and James N. Rider in a deed dated June 22, 1973 and recorded June 27, 1973. The Riders, in turn, had acquired the property from George H. Longstaff by deed dated February 12, 1973, and recorded February 26, 1973. Longstaff had become the owner of 612.7 acres as devisee of Caroline Longstaff whose title was derived from a deed of Paul Sheldon and others dated August 24, 1920, and recorded October 2, 1920. Plaintiff's complaint contains no information as to the ownership of the land between Alexander Macomb in the late eighteenth century and Paul Sheldon in the early twentieth.

which the State ultimately derives its title.[2]

These actions prompted the State to institute the instant lawsuit, basing jurisdiction on 28 U.S.C. § 1331 and seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. In its prayer for relief, New York requested the district court to:

> grant plaintiff's judgment removing, as a cloud on plaintiff's title, the effect of defendant's contention that they are rightfully in possession of the hereinbefore described premises and declaring that plaintiff is the owner in fee of said premises and restoring possession of the premises to plaintiff and that the defendants be barred from reentering possession of the same.

Construing the State's claim as basically one for ejectment, Judge Port concluded that the "well-pleaded complaint" need only establish the plaintiff's right to possession and that this was adequately done by pleading the 1973 deed. He held that the State's extended references to the 1798 treaty were unnecessary surplusage included only to blunt the defense which the Ganienkeh Manifesto had led it to expect. He further ruled that such anticipatory allegations do not satisfy the requirements of § 1331. We agree.

It is the nature of the plaintiff's claim for relief which provides substance to the otherwise amorphous standard of "arising under" jurisdiction set forth in § 1331. Federal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law. "A [federal] suit does not arise under a law renouncing a defense," *Gully v. First National Bank,* 299 U.S. 109, 116, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936).

At the outset, we must therefore deal with the plaintiff's contention that the district court erred in rejecting the State's self-serving characterization of its complaint as an action to remove a cloud on title rather than one for ejectment. The flaw in plaintiff's argument is its fallacious assumption that the pleader operates free of constraints in choosing between these two related causes of action. A bill to remove a cloud on title is traditionally a suit in equity, and, as such, available only when there is no adequate remedy at law. *Humble Oil & Refining Co. v. Sun Oil Co.,* 191 F.2d 705, 712 (5th Cir. 1951), cert. denied, 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 687 (1952). Despite the merger of law and equity in 1938, this basic principle of federal jurisprudence retains its viability as a safeguard for the right to a jury trial guaranteed by the Seventh Amendment. Cf. *Zunamon v. Brown,* 418 F.2d 883, 889 (8th Cir. 1969). Possession is the critical determinant. *Whitehead v. Shattuck,* 138 U.S. 146, 11 S.Ct. 276, 34 L.Ed. 873 (1891). Since the State is concededly not in possession of the land in Herkimer County, it was obliged first to pursue the legal remedy of ejectment. *Mojave Tribe v. LaFollette,* 478 F.2d 1016, 1018 n. 3 (9th Cir. 1973). Judge Port was correct in construing the State's complaint consonant with this obligation.

In an action for ejectment, plaintiff need only allege that he is the owner in fee and that he has been wrongfully ousted from possession by the action of the defendants. *Taylor v. Anderson,* 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914). Neither of these elements required the State to plead, as it did, the validity of the treaty of 1798. Stripped of this assertion, New York's complaint is bereft of any allusion to federal law.

It is doubtless true, as the State contends, that the Ganienkeh Manifesto gave it strong reason to believe that the defendants would attempt to justify their conduct by challenging the treaty executed by their ancestors. But the jurisdiction of the federal courts cannot be made to hinge upon such expecta-

---

**2.** The defendants individually make no claim to the land. They seek "only the right to live on the land of the Mohawk Nation under the jurisdiction of the Six Nation Confederacy."

tions. "In the orderly course, the plaintiffs were required to state their own case in the first instance, and then to deal with the defendants' after it should be disclosed in the answer," *Taylor v. Anderson,* 234 U.S. at 75, 34 S.Ct. at 724.

We find no merit in plaintiff's argument that the doctrine of *Taylor v. Anderson* has been somehow eroded by the Supreme Court's more recent opinion in *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). The narrow ruling in *Oneida* was clearly based upon the historically unique relationship developed between the federal government and the Indian nations, and was limited to a case where an Indian nation pleaded an original Indian title which it claimed to have subsisted. Its holding cannot be extended to rescue the pleadings of a non-Indian plaintiff such as the State of New York.

 Thus, we would ordinarily have little difficulty in affirming the district court's decision to dismiss New York's complaint for lack of jurisdiction. As the Supreme Court has just recently reiterated, "for the most part, matters of local property law [are] to be vindicated in local courts," *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 676, 94 S.Ct. 772, 782, 39 L.Ed.2d 73 (1974). However, during oral argument we were informed by the State that the Ganienkeh Manifesto promulgated by the defendants represents a cloud on title not only to the 612.7 acres in Herkimer County but to all of northeastern New York and parts of neighboring states. As to land so challenged and still within the State's control, a suit to remove a cloud on title would properly lie. *Whitehead v. Shattuck, supra.* Moreover, in contrast to an action for ejectment, a bill to remove a cloud on title may, as the State's complaint does, introduce a question of federal law in its description of the cloud which plaintiff seeks to re-

move. *Hopkins v. Walker,* 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270 (1917). Under these circumstances, we believe the proper course is to allow New York the opportunity to amend its complaint.[3] Cf. *Stephenson v. Landegger,* 464 F.2d 133 (2d Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 520, 34 L.Ed.2d 488 (1972).

Since the district court found it unnecessary to reach the grounds for dismissal urged by appellees, to wit, whether the Mohawk Indian Nations and the Six Nation Confederacy should have been joined as indispensable parties, whether sovereign immunity creates a bar to their joinder and whether the complaint raises a political question, the record provides an insufficient basis for us to resolve them at this time.

Affirmed, as modified.

**3.** In view of its decision to dismiss the State's complaint, the district court also denied, without reaching the merits, a motion to intervene filed by Douglas L. Bennett and Bonnie L. Bennett, landowners in Herkimer County, and the Big Moose Property Owners Association, a non-profit corporation of the State of New York. Should the State choose to submit an amended complaint, the motion to intervene may also be renewed.