**In re COHOES INDUSTRIAL TERMINAL, INC., Debtor.**

**Bankruptcy No. 86 B 20201.**

United States Bankruptcy Court, S.D. New York.

June 12, 1986.

Leon C. Baker, White Plains, N.Y., for debtor and Gloria F. Baker.

Zubres, D'Agostino & Hoblock, P.C., Albany, N.Y., for Latham Sparrowbush Associates.

Charles A. Goldberger, White Plains, N.Y., for Latham Sparrowbush Associates.

DECISION ON THREE MOTIONS SEEKING ORDERS LIFTING AUTOMATIC STAY, TO PUNISH FOR CONTEMPT AND PERMISSION FOR DEBTOR TO TRANSFER PROPERTY OF THE ESTATE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor in this Chapter 11 case, Cohoes Industrial Terminal, Inc., asserts leasehold rights to an apartment complex now owned by Latham Sparrowbush Associates, as landlord. The landlord claims that the lease was terminated upon the exercise of a termination option contained in the lease and by a final state court order on default which confirmed the landlord's termination and which was sustained on appeal. The debtor disputes the validity of the termination clause on the ground that it violates the rule against perpetuities and asserts that the landlord's state court termination order was obtained by default because the landlord's service of process was made on the New York Secretary of State. The debtor claims that it did not receive notice of the commencement of the landlord's state court action because it failed to designate a replacement for the original agent to receive service of process, who had died many years before. The landlord contends that the state court order confirming the termination of the lease is *res judicata* and the debtor has no right to title or possession under the lease. The debtor counters with the assertion that it never had a right of possession and that the debtor was merely a corporate nominee of its secretary, Gloria F. Baker, who actually had possession and operated the apartment complex. Thus, the debtor claims that it holds bare legal title to the leasehold rights and that all the equitable interests, including the right of possession, are held by Gloria F. Baker. However, a state court post-judgment receiver, who was appointed after the entry of the order confirming the landlord's termination of the lease, also claims a right of possession in order to collect the rents from the leased apartment complex and to administer the property.

In the light of this background, the landlord moved pursuant to 11 U.S.C. § 362(d)(1) for relief from the automatic stay, or for a determination that the stay does not apply to the property in question on the ground that the debtor does not have a cognizable interest in the property. The debtor then moved to hold the landlord and the state court post-judgment receiver in contempt for allegedly violating the automatic stay by attempting to enforce the state court order with respect to possession of the property and the turnover of the tenants' rent security deposits.

While these two motions were *sub judice*, Gloria F. Baker moved, with the debtor's consent, for an order directing the debtor to transfer its alleged bare leasehold title interests to her on the ground that she is actually the equitable owner of the lease, whereas the debtor is only her nominee. This motion is premised on the theory that if Gloria F. Baker is able to obtain court approval for a transfer of the debtor's claimed leasehold title interest to her the entire dispute between the debtor and the landlord would be moot. Gloria F. Baker would then be in a position to litigate anew with the landlord in the state court as to the validity of the termination option in the lease and her asserted right to exercise leasehold interests in the property.

## FINDINGS OF FACT

1. On August 28, 1968, Latham Sparrowbush Corp., as landlord, and Shaker Estates, Inc. as tenant, executed a lease (the "Lease") of an apartment complex in Albany County New York (the "Apartments"). On the same day Latham Spar-

rowbush Corp. deeded the property over to Latham Sparrowbush Associates ("Associates").

2. On December 31, 1973, Shaker Estates, Inc. assigned its rights under the lease to Cohoes Industrial Terminal, Inc., the debtor in this case. On December 26, 1984, Associates gave notice of its exercise of an option to terminate the Lease, effective 60 days from the giving of notice, pursuant to Article 32 of the Lease.[1] Leon C. Baker, president of the debtor, sent Associates a letter acknowledging receipt of the notice on December 27, 1984. The letter also questioned the validity of Article 32 of the Lease.

3. Some time subsequent to December 1984, (the record does not reveal the exact date) Gloria F. Baker commenced a declaratory action in State Court seeking various relief with respect to the Lease. Gloria F. Baker is the secretary of the debtor. The plaintiff's attorney in that case is her husband, Leon C. Baker, who is also president of, and attorney for, the debtor.

4. On or about February 8, 1985 Gloria F. Baker made a motion for summary judgment seeking, among other things, a declaration that Article 32 of the Lease was invalid because the repurchase option granted therein to Associates violated the rule against perpetuities. Defendant Associates cross moved to dismiss the complaint on the ground that Gloria F. Baker lacked standing to sue because she was not in privity with Associates and had no connection with the Lease. By a decision entered April 30, 1985, and order dated June 20, 1985, Justice Anthony Cerrato of the New York Supreme Court, Westchester County dismissed Gloria F. Baker's complaint, holding that she had no standing to question the validity of the Lease as she was a

legal outsider to it. The court specifically refused to reach any other issue. Debtor's motion to reargue was denied.

5. On or about February 13, 1985, Associates commenced an action against the debtor by service of two copies of a summons and complaint on the Secretary of State pursuant to N.Y.B.C.L. § 306.[2] The debtor had designated an attorney as its agent who apparently died prior to the service of the summons and complaint with the result that the debtor never received that copy of the papers.

6. A copy of Associates' summons and complaint was annexed as an exhibit to Associates' cross motion in the action between Gloria F. Baker and Associates, which was served prior to February 27, 1985.

7. On February 25, 1985, Associates exercise of its option to terminate the Lease became effective. (No stay of the termination of the Lease has been sought or granted). On March 15, 1985 the debtor defaulted in answering.

8. On April 18, 1985, an order and default judgment was signed by Justice Lawrence E. Kahn of the New York Supreme Court, Albany County, which:

(1) held that Article 32 of the Lease was valid and enforceable;

(2) directed the debtor to deliver possession of the premises to Associates;

(3) ordered that, upon delivery of possession, Associates tender to the debtor a certified check for $350,000 to the order of, or endorsed over to the debtor. (the debtor acknowledged receipt of the funds on March 27, 1986).

9. On April 19, 1985, the order was entered. On May 20, 1985, Justice Kahn denied the debtor's motion to vacate the de-

---

**1.** The relevant portion reads as follows:

Section 32.01 The Landlord reserves the right to terminate or receive an assignment of this lease and the term hereof, upon giving sixty (60) days notice in writing to the Tenant of Landlord's intention so to terminate the lease and the lease shall cease, determine and end at the expiration of sixty (60) days from the day when such notice is given.

**2.** N.Y.B.C.L. § 306 provides that any domestic or licensed foreign corporation may be served with process by delivering 2 copies of the Summons and Complaint to the New York Secretary of State or his designee. The New York Secretary of State retains one copy and sends the other via certified mail to the address listed by the corporation for service of process.

fault judgment entered on April 19, 1985, which was made pursuant to C.P.L.R. § 5015.

10. On June 21, 1985, the Supreme Court, Appellate Division Third Department granted a stay of execution of the April 19, 1985 order and judgment pending debtor's appeal to the Third Department.

11. On October 10, 1985, a unanimous Appellate Division affirmed Justice Kahn's denial of the debtor's motion to vacate the default judgment pursuant to C.P.L.R. § 5015(a) and C.P.L.R. § 317 on the dual grounds that (1) a corporation is under an obligation to notify the Secretary of State of a change of address and failure to do so is not a reasonable excuse, and (2) that the debtor had had actual notice by receipt of the summons and complaint in time to defend. On October 16, 1985, the Appellate Division entered an order affirming the April 19, 1985 order.

12. On December 20, 1985, the Appellate Division entered an order denying the debtor permission to appeal to the Court of Appeals. *Latham Sparrowbush Associates v. Cohoes Industrial Terminal, Inc.,* 114 A.D.2d 584, 494 N.Y.S.2d 195 (3rd Dep't 1985).

13. On February 13, 1986, the New York Court of Appeals denied the debtor's appeal from the order denying leave to appeal from the order of the Appellate Division on the ground that the denial was an interlocutory order. 67 N.Y.2d 736, 500 N.Y.S.2d 100, 490 N.E.2d 1226 (1986). On March 27, 1986, the New York Court of Appeals denied the debtor's motion to reargue its appeal from the Appellate Division's denial of leave to appeal.

14. On March 27, 1986, Justice Kahn of the Supreme Court signed an order which:

(1) appointed a post-judgment receiver for the collection of rents pursuant to C.P.L.R. § 5106;

(2) ordered that the receiver take possession of the premises;

(3) that the tenants in possession, their agents and employees surrender possession, the keys and current leases;

(4) that any person or persons in possession of the premises who do not have valid leases give up possession;

(5) authorized the receiver to manage the property;

(6) enjoined the debtor and all other persons other then the receiver from collecting rents, interfering with possession and ordering them to transfer to the receiver all security deposits until possession is delivered to Associates;

(7) ordered the receiver to post a bond.

15. On April 24, 1986, the Appellate Division entered an order denying the debtor's motion for a stay pending its appeal of Justice Kahn's order of March 27, 1986.

16. On April 28, 1986, Associates commenced a motion, by order to show cause praying for the transfer of possession of the premises to Associates. The motion was made returnable on May 7, 1986. Also returnable on May 7, 1986 were several motions by the receiver to hold Leon C. Baker and William Magee in contempt for failure to turn over rent security deposits. Also returnable on May 7, 1986 were motions by Associates for a protective order against the debtor's notices to take depositions served post-judgment and a cross motion directing that the receiver should grant only 90 day leases. Gloria F. Baker also had a motion returnable on that date for permission to intervene in order to sue the receiver. All but three of the motions were adjourned pending the outcome of Associates' motion to lift the stay pursuant to 11 U.S.C. § 362(a).

17. The debtor filed its petition for relief under Chapter 11 with this court on April 28, 1986. On May 7, 1986, Associates moved for relief from the automatic stay.

18. On May 12, 1986, the debtor brought an order to show cause to punish Associates for various violations of the automatic stay.

19. By a show cause order made returnable on May 29, 1986, Gloria F. Baker applied for an order directing the debtor to transfer to her the legal title to the garden apartment complex so that she could seek

to litigate in state court her claimed ownership of the leasehold interest against the claims of Associates.

## DISCUSSION

The disposition of two of the three pending motions is governed by whether or not the automatic stay under 11 U.S.C. § 362(a) is applicable to a lease which Associates claims was terminated before the commencement of this case. Article 32 of the Lease provides that the landlord has an option to terminate the Lease upon giving the tenant 60 days notice of its intention to do so and expressly states that the Lease automatically terminates at the end of the 60 days. There is no issue as to fact that the proper notice was sent and that it was received by the debtor. Likewise there is no question that it has been more than 60 days since the notice was sent. It is at this point that the actions of the parties created the various issues raised in these motions.

Generally the practice in New York State in attempting to evict a tenant whose lease has been terminated is by use of one of the summary procedures as set forth in N.Y.R. P.A.P.L. § 701 et seq., such as a "holdover" proceeding pursuant to N.Y.R.P.A.P.L. § 711(1). This was not the route chosen. First Gloria F. Baker brought a declaratory action in New York Supreme Court, Westchester County seeking a declaration that Article 32 of the Lease was void by reason of the rule against perpetuities. During the pendency of Gloria F. Baker's action Associates brought its own declaratory action, in New York State Supreme Court for Albany County, seeking a declaration that Article 32 of the Lease was valid and demanding specific performance of its terms because of an alleged anticipatory breach.

Associates' action was commenced pursuant to N.Y.B.C.L. § 306 by service of two summonses and complaints on the Secretary of State one of which was forwarded to the debtor at the address it had designated for service of process. In New York State jurisdiction is obtained over a corporation upon the receipt by the Secretary of State of the summons and complaint. *Augusta Lumber & Supply, Inc. v. Herbert H. Sabbeth Corp.*, 101 A.D.2d 846, 475 N.Y.S.2d 878 (2d Dep't 1984) (giving full faith and credit to a Virginia default judgment where the complaint was served on the Virginia Secretary of State); *Micarelli v. Regal Apparel Ltd.*, 52 A.D.2d 524, 381 N.Y.S.2d 511 (1st Dep't 1976); *Royal Athletic Surfacing Co., Inc. v. Crossfield Products Corp.*, 120 Misc.2d 184, 465 N.Y. S.2d 665 (Sup.Ct. Nassau Co.1983); D. Siegel, Handbook on New York Practice § 70. In view of the fact that the designation for purposes of service of legal process had long since ceased to be effective and the debtor had not notified the Secretary of State of the change of address pursuant to N.Y.B.C.L. § 304, the debtor did not receive the copy of the summons and complaint mailed to it by the Secretary of State. Under N.Y.B.C.L. § 304 it is a corporation's duty to notify the Secretary of State of any change of address. *Boss v. Avoxe Corporation*, 97 A.D.2d 601, 468 N.Y.S.2d 203 (3d Dep't 1983). The debtor did, however, receive actual notice in time to defend the action because Associates included a copy of the summons and complaint and the affidavit of service as an exhibit in one of its pleadings in the Gloria F. Baker declaratory action. On April 19, 1985, some two months after Associates action was commenced, and almost one month after the Lease terminated in accordance with Article 32, a default judgment and order was entered by the Supreme Court Albany County.

The April 19 order and judgment declared that Article 32 of the Lease was valid. The record does not disclose the date the debtor was served with the judgment. The debtor made a motion to vacate its default on the basis that it had no notice of Associates' action and that it had the meritorious defenses that Article 32 was void and that Gloria F. Baker was the real party-in-interest. The motion was denied on May 20, 1985 and the debtor appealed.

On October 10, 1985, a unanimous Appellate Division for the Third Department affirmed the May 20, 1985 denial of the mo-

tion to vacate. In its decision, the court held that under C.P.L.R. § 5015 (the statute under which the debtor moved), the debtor had failed to proffer a reasonable excuse as to why it failed to notify the Secretary of State of its change of address as required by law. The Appellate Division also held that under C.P.L.R. § 317 (which does not require a reasonable excuse in order to vacate a default), that the debtor had had actual notice of the proceeding in time for it to defend. The debtor in its motion had claimed not to have had such notice. C.P.L.R. § 317 will only vitiate a defendant's default when the defendant does not receive actual notice of the commencement of an action. *See Meyer v. Chas. Fisher & Sons Dental Laboratory* 90 A.D.2d 889, 456 N.Y.S.2d 520, 521 (3d Dep't 1982); *see also Rifenburg v. Liffiton Homes, Inc.*, 107 A.D.2d 1015, 486 N.Y.S.2d 529 (4th Dep't 1985). The determination was final upon the Appellate Division's December 20, 1985 denial of the debtor's motion for permission to appeal to the New York Court of Appeals. Any question of its finality was settled by the February 13, 1986 denial of the debtor's appeal of the December 20, 1986 decision, and by the New York Court of Appeals' denial on March 27, 1986 of the debtor's motion to reargue that appeal. By the most generous construction it was finally determined on March 27, 1986 that the Lease had terminated and the debtor had no cognizable interest or possessory right to the leasehold premises.

■ Some of the confusion is due to the fact that both parties misperceive the nature of Associates' declaratory action. The usual practice to recover possession of real property is via a summary proceeding. After having alleged ownership and the debtor's wrongful possession, Associates requested as part of the relief that the debtor specifically deliver possession of the premises upon the termination of the Lease. This relief was granted, which was tantamount to obtaining affirmative relief in an action for common law ejectment, now subsumed into N.Y.R.P.A.P.L. § 601 *et seq.* A complaint in ejectment should allege that the plaintiff is the owner of the land and, that the defendant wrongfully ousted the plaintiff from possession. *Oneida Indian Nation of New York State v. The County of Oneida*, 719 F.2d 525 (2d Cir.1983), *modified on other grounds and aff'd*, 470 U.S. ——, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985), *reh. denied*, —— U.S. ——, 105 S.Ct. 2173, 85 L.Ed.2d 491 (1985); N.Y.R.P.A.P.L. § 641. The fact that the complaint was mistitled as an action for specific performance is of no moment if the facts alleged and the relief requested constituted an action for ejectment. *State of New York v. White*, 528 F.2d 336, 338 (2d Cir.1975). Nor is the fact that this was a declaratory action a bar to the sufficiency of the complaint. *Jason v. Abramowitz*, 272 App. Div. 1026, 75 N.Y.S.2d 781 (Sup.Ct. Kings Co. 1947) (action to determine plaintiff's rights as a lessee of apartment with prayer that the defendant deliver possession, held to be an action for rejectment). Thus, Associates' complaint commenced a valid form of action which resulted in a valid judgment and which extinguished the Lease and the debtor's right to possession.

## RES JUDICATA AND COLLATERAL ATTACK

The function of law is to end disputes or, as Lord Coke put it, to achieve "rest and quietness." *Ferrer's Case*, VI Coke 7, 77 Eng.Rep. 263 (K.B. 1599). The principal of *res judicata* serves this function of law by precluding a claim between the same parties that was previously decided in another forum. As Justice Holmes said:

> A judgment is conclusive as to all the *media concludendi; United States v. California & Oregon Land Co.*, 192 U.S. 355 [24 S.Ct. 266, 48 L.Ed. 476]; and it needs no authority to show that it cannot be impeached either in or out of the State by showing that it was based upon a mistake of law. Of course a want of jurisdiction over either the person or the subject matter might be shown. . . .

*Fauntelroy v. Lum*, 210 U.S. 230, 237, 28 S.Ct. 641, 643, 52 L.Ed. 1039 (1908).

■ The debtor contends that it may attack the judgment because it was never served with process. It cannot raise that issue again because the questions of jurisdiction and due process were litigated in the state where it was held that the debtor had actual notice in time to defend. Under New York law there is no deprivation of due process if a defendant was given the opportunity to open a default. *Micarelli v. Regal Apparel Ltd.*, 52 A.D.2d 524, 381 N.Y.S.2d 511 (1st Dep't 1976). The debtor has not challenged the constitutionality of N.Y.B.C.L. § 306.

■ For over 200 years it has been the law in Federal courts that a state court judgment is entitled to the same faith and credit which it had in the state court. *See e.g. McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Hampton v. M'Connel*, 16 U.S. 234, 3 Wheat. 234, 4 L.Ed. 378 (1818) (per Chief Justice Marshall); *Bottine v. Sadore Management Corp.*, 764 F.2d 116 (2d Cir.1985); *Finkelstein v. Capuano*, 792 F.2d 275, 277–78 (2d Cir.1986). This need for finality applies equally to determinations of both personal and subject matter jurisdiction. *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance*, 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982). A State Court determination of personal jurisdiction is given preclusive effect. *Underwriters National Assurance Co.*, 455 U.S. at 708, 102 S.Ct. at 1368; *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939). This encompasses a motion to set aside a default judgment for want of personal jurisdiction. *American Surety Co. v. Baldwin*, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932). Justice Brandeis stated the rule thus:

A decision in a proceeding begun by motion to set aside a judgment for want of jurisdiction is, under Idaho law, *res judicata* and precludes a suit to enjoin enforcement of the judgment.

287 U.S. at 166, 53 S.Ct. at 102; *see also Baldwin v. Iowa State Traveling Men's Association*, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931).

Thus, the debtor having moved to vacate the default judgment and having:

had [its] day in court, with opportunity to present [its] evidence and [its] view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first.

*Stoll v. Gottlieb*, 305 U.S. 165, 172, 59 S.Ct. 134, 138, 83 L.Ed. 104 (1938).

"One trial of an issue is enough. The principles of *res judicata* apply to questions of jurisdiction as well as to other issues," as well as to jurisdiction of the subject matter as of the parties.

*Treinies v. Sunshine Mining Co.*, 308 U.S. at 78, 60 S.Ct. at 51 (footnotes omitted.)

The debtor argues that the Appellate Division relied on a case which was reversed by the Court of Appeals on the same day that it denied the debtor's motion to reargue and that the Third Department would vacate the default judgment now. The determination of the Appellate Division stands as *res judicata* and the court will not surmise as to what position the Appellate Division might now take. In addition, the case cited by the debtor, *Eugene Di Lorenzo, Inc. v. A.C. Dutton Lumber Co.*, 67 N.Y.2d 138, (1986) stands for the proposition that where a motion to excuse a default is made under C.P.L.R. § 5015 (which requires a reasonable excuse), it is error not to also consider C.P.L.R. § 317 which only requires lack of notice and a meritorious defense. Since the Appellate Division in its written opinion stated that the debtor had actual notice in time to defend thus precluding relief pursuant to C.P.L.R. § 317 it probably would be futile for the debtor to move for another reargument. *See e.g. Brac Construction Corp. v. Di-Com Corp.*, 51 A.D.2d 740, 379 N.Y. S.2d 483 (2d Dep't 1976); *Royal Athletic Surfacing Co., Inc. v. Crossfield Products*

*Corp.,* 120 Misc.2d 184, 465 N.Y.S.2d 665 (Sup.Ct. Nassau Co. 1983).

## THE AUTOMATIC STAY

The debtor asserts that it does not have possession of the leased property because it is merely the nominal tenant for Gloria L. Baker, who is the actual owner who operates the property under the name "Gloria Baker, d/b/a Sparrowbush Apartments." Thus, the debtor maintains that its cognizable interest under the Lease is the legal title to the leasehold as nominee of Gloria Baker. Pursuant to 11 U.S.C. § 541(d), where the debtor held bare legal title as of the commencement of a bankruptcy case, without any equitable interest, the property of the bankruptcy estate will consist of bare legal title only without any equitable interest in the property. The debtor's bare legal title to the leased property was terminated on February 25, 1985, which was sixty days after Associates gave the debtor written notice of its exercise of its termination option under Article 32 of the Lease. This termination was confirmed by the New York Supreme Court order dated April 18, 1985, which was affirmed by the Appellate Division, Third Department on October 10, 1985. The New York Court of Appeals denied the debtor's request for leave to appeal and denied the debtor's appeal from the order denying leave to appeal. Moreover, on March 27, 1986, the New York Court of Appeals denied the debtor's motion to reargue its appeal from the Appellate Division's denial of leave to appeal. Hence, the New York Supreme Court order dated April 18, 1985 is *res judicata* and binding on this court, with the result that the debtor's leasehold interests must be regarded as terminated.

█ It is settled law that an unexpired lease that was terminated before the filing of a bankruptcy petition is not property of the estate within the meaning of 11 U.S.C. § 541 and is neither affected by the automatic stay under 11 U.S.C. § 362(a) nor may it be assumed by the debtor under 11 U.S.C. § 365. *Kopelman v. Halvajian (In re Triangle Laboratories, Inc.),* 663 F.2d

463, 467–68 (3rd Cir.1981); *In re Scarsdale Tires, Inc.,* 47 B.R. 478 (S.D.N.Y.1985); *In re GSVC Restaurant Corp.,* 3 B.R. 491, 6 B.C.D. 134 (Bankr.S.D.N.Y.1980), *aff'd* 10 B.R. 300, 6 B.C.D. 295 (S.D.N.Y.1980). This point has since been codified in 11 U.S.C. §§ 362(b)(9), 365(c)(3) and 541(d) with respect to nonresidential property. Accordingly, the automatic stay does not operate to enjoin Associates from enforcing any rights which it may claim with respect to the property covered by the terminated lease.

## DEBTOR'S MOTION FOR CONTEMPT

The debtor's motion for contempt in this court for alleged violations of the automatic stay is predicated on a brace of contempt motions filed in the state court by Associates and the state court post-judgment receiver. Associates' motion sought to punish the debtor and its officers for contempt in refusing to deliver possession of the premises. The receiver's motion for contempt was to enforce the requirement under state law that the tenants' security deposits be turned over to the receiver, because the funds are held in trust for the tenants as security for their performance under their leases. N.Y.G.O.L. § 7–103.

█ As to Associates' motion for contempt, the New York Supreme Court order directing the debtor to deliver possession of the leased property to Associates in exchange for the receipt of $350,000 from Associates, relates to property that is not part of the debtor's estate and with respect to which the debtor denies that it holds any possessory interest. Hence, the contempt motion does not seek to enforce the collection of a prepetition claim against the debtor or to do indirectly what Associates was precluded from doing directly because of the automatic stay as to property of the estate. Indirect violations of the automatic stay are not tolerated and creditors may not pursue contempt proceedings to enforce the collection of prepetition claims or to obtain possession of the property of the estate. *In re Thayer,* 24 B.R. 491 (Bankr. W.D.Wis.1982); *Rhoten Construction Co.*

*v. Third National Bank (In re Rhoten Construction Co.),* 22 B.R. 335 (Bankr.M. D.Tenn.1982). However, a state court pre-petition order which does not relate to the collection of prepetition claims or property of the estate may be enforced by contempt proceedings against the debtor and its officers in order to vindicate the dignity of the state court without violating the automatic stay. *Dumas v. Atwood (In re Dumas),* 19 B.R. 676 (Bankr.App. 9th Cir.1982). *See David v. Hooker, Ltd.,* 560 F.2d 412 (9th Cir.1977). Therefore, the debtor's motion to punish Associates for violating the automatic stay cannot be sustained.

■ The receiver's motion for contempt was to enforce the requirement of state law that tenants' security deposits be turned over to a receiver with 5 days of the receiver's appointment. N.Y.G.O.L. § 7–105. The debtor was required to maintain these funds as a trustee for the benefit of the tenants as security for their performance under their leases. N.Y.G.O.L. § 7–103; *Brown v. Atteritano (In re Spinelli),* 36 B.R. 819 (Bankr.E.D.N.Y.1984); *Mallory Associates v. Barving Realty Co.,* 300 N.Y. 297, 90 N.E.2d 468 (1949), *rearg. denied,* 300 N.Y. 680, 91 N.E.2d 331 (1950); *Glass v. Janbach Properties,* 73 A.D.2d 106, 425 N.Y.S.2d 343 (2d Dep't 1980). In view of the fact that the debtor lost any legal right to possession of the security deposits when the lease was terminated, and also when the receiver was later appointed, it follows that the security deposits were not part of the estate upon the filing of the petition and the debtor may not claim the benefit of the automatic stay as to these funds. Therefore, the receiver's motion to enforce the New York Supreme Court order directing the debtor to turn over these funds to the receiver does not violate the automatic stay.

## GLORIA F. BAKER'S MOTION SEEKING A TRANSFER OF TITLE

Leon C. Baker, as attorney and husband of Gloria F. Baker, and as the president and the attorney for the debtor, urges that this court should approve Gloria F. Baker's motion to direct the debtor to convey the legal title of the apartment complex lease to her. In page 2 of his reply affidavit sworn to on May 27, 1986, Mr. Baker summarizes his position as follows:

> Both debtor and Gloria Baker propose this as the most logical way to disentangle debtor from a controversy with which debtor has no concern. Debtor receives no benefit from acting as Gloria Baker's nominee. Neither debtor nor any of its creditors will be prejudiced if debtor is relieved of this thankless responsibility. The ultimate dispute is between LSA and Gloria Baker. If debtor transfers title to Gloria Baker, she can defend it without involving debtor, and LSA can get at her directly rather than indirectly through debtor.

Initially, it should be observed that this court has ruled that the state court order confirming the termination of the lease is *res judicata* and that the leasehold interest in the apartment complex is not property of the debtor's estate within the meaning of 11 U.S.C. § 541. Accordingly, the automatic stay does not apply to Associates' actions to obtain possession of the apartment complex precisely because these actions pertain to "a controversy with which the debtor has no concern." Moreover, this court agrees that in so far as the property is concerned: "Neither debtor nor any of its creditors will be prejudiced if debtor is relieved of this thankless responsibility."

It does not follow, however, that the debtor should be authorized to transfer its alleged title to the leasehold interest after a prepetition final state court order has already terminated any such interest. In these circumstances, the debtor has no title which can be transferred or abandoned. Moreover, in exchange for being able to exercise the termination option in Article 32 of the Lease, Associates is required to compensate the debtor in the sum of $350,-000. Obviously the debtor's creditors, who have not been given notice of Gloria F. Baker's motion, would not regard the debtor's right to receive this payment as a

burdensome asset, or of inconsequential value and benefit to the estate, which the debtor should be permitted to abandon within the meaning of 11 U.S.C. § 554.

■ It is argued on behalf of Gloria F. Baker that she may verbally designate the debtor as her nominee for holding title to the leasehold interest and that this nominee relationship is binding on all parties with actual knowledge, including Associates, citing *Foreman v. Foreman*, 251 N.Y. 237, 167 N.E. 428 (1929). Under this theory, she would be entitled to receive the $350,-000 lease termination payment as the equitable leasehold owner. This point elides the fact that pursuant to 11 U.S.C. § 1107(a) a debtor in possession in a Chapter 11 case has the rights and duties of a trustee in bankruptcy. Thus, pursuant to 11 U.S.C. § 544(a)(3) a trustee in bankruptcy has,

> as of the commencement of the case, and *without regard to any knowledge of the trustee or of any creditor*, the rights and powers of, or may avoid any transfer of property of the debtor or an obligation incurred by the debtor that is voidable by—
> (3) *a bona fide purchaser of real property* ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser ... exists.

(emphasis added). Accordingly, the debtor in possession, as a hypothetical bona fide purchaser of real estate, is not bound by the verbal nominee relationship and may set it aside to claim the $350,000 lease termination payment. If the debtor fails to exercise its avoiding powers to claim a right to this payment, a creditors' committee, with court approval, may pursue this asset. *Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises)*, 779 F.2d 901 (2d Cir.1985).

Gloria F. Baker contends that a debtor's estate does not include unrecorded equitable interests of third parties in properties as to which the debtor has legal title, citing *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982); *Vineyard v. McKenzie (In re Quality Holstein Leasing)*, 752 F.2d 1009 (5th Cir.1985). However, in *McCannon v. Marstan*, the trustee's avoiding powers as a bona fide purchaser of real property in accordance with 11 U.S.C. § 544(a) did not apply to an unrecorded agreement as the trustee was charged with knowledge of the third party's interest because of the third party's actual open possession of the property in question. Moreover, such constructive notice was created as a matter of state law. Thus, state law imposed the constructive notice on all bona fide purchasers, including trustees in bankruptcy. In *Vineyard v. McKenzie (In re Quality Holstein Leasing)*, the holder of an unperfected security interest in an aircraft owned by the debtor prevailed over the trustee in bankruptcy as to the proceeds from the trustee's sale of the aircraft because under state law a constructive trust was imposed to protect the equitable owner from whom the debtor had fraudulently obtained the aircraft. The court concluded that 11 U.S.C. § 541(d) prevailed over the trustee's strong-arm powers because of the debtor's fraud and said:

> In summary, we find that the courts below erred in concluding that section 544 empowers a bankruptcy trustee to retain for the benefit of the estate property that the debtor obtained by fraud and upon which state law has imposed a valid constructive trust.

*Vineyard v. McKenzie (In re Quality Holstein Leasing)*, 752 F.2d at 1015.

In the case at bar, Gloria F. Baker has not established any basis for imposing a constructive trust in her favor upon the debtor's ownership of the apartment complex. She claims ownership of the property pursuant to an unrecorded verbal agreement pursuant to which the debtor corporation allegedly acted as Gloria F. Baker's nominee. Gloria F. Baker is an insider of the debtor within the meaning of 11 U.S.C. § 101(28)(B)(ii) and does not claim that the debtor obtained the property from her by

fraud. Nor has she established that she had continuous open possession of the property sufficient to constitute constructive notice under state law of her unrecorded title claim. Therefore, a trustee in bankruptcy of the debtor, in the exercise of the avoiding powers under 11 U.S.C. § 544(a), could properly assert that the $350,000 lease termination payment belongs to the debtor's estate.

■ Additionally, Gloria F. Baker did not allege the existence of a constructive trust in her favor, nor did she attempt to prove this point. She merely claimed equitable ownership of the property and sought to prove the nominee relationship by testifying in the stay motion that she had given checks in payment of rent which she said came from her own funds as distinguished from the debtor's assets. The concept of a constructive trust was raised for the first time in Bakers' post hearing brief in response to the court's suggestion at the hearing that the debtor in possession occupies the same status as a trustee in bankruptcy armed with the strong-arm avoiding powers under 11 U.S.C. § 544(a) and that Gloria F. Baker's motion for an order authorizing the debtor to transfer title to her, so as to moot the dispute between the debtor and Associates, did not take into consideration the debtor's obligation to its creditors to set aside unrecorded verbal agreements as to the ownership of the Lease interest. A court of equity will impose a constructive trust where the claimant meets its burden of proving that property was acquired under such circumstances that the acquiring party ought not in good faith hold and enjoy the beneficial interest. *Turner v. Emmons & Wilson, Inc. (In re Minton Group, Inc.)*, 28 B.R. 774, 783 (Bankr.S.D.N.Y.1983). The existence of a constructive trust was neither pleaded nor proved.

In the light of the foregoing, it would not be in the best interests of the creditors of this estate to allow the debtor to transfer its rights under the Lease to Gloria F. Baker, who would then be entitled to receive the $350,000 leasehold termination payment in the event she is unable to succeed in her proposed state court litigation with Associates to establish the invalidity of the lease termination clause. Hence, Gloria F. Baker's motion is denied.

## ATTORNEYS' FEES

Associates seeks an order directing Leon C. Baker, the attorney for Gloria F. Baker, who is also her husband as well as the attorney and president of the debtor, to pay Associates its attorneys' fees incurred in opposing her motion. This fee application is based on the claim that Gloria F. Baker's motion for seeking a transfer of title from the debtor is frivolous and calculated to delay and frustrate Associates' right to possession of the leased apartment complex.

■ One of the exceptions to the general rule that parties to litigation pay their own attorneys' fees and expenses, even when successful, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 759, 100 S.Ct. 2455, 2460, 65 L.Ed.2d 488 (1980); *Alyeska Pipeline Service, Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975), is the principle that an award of counsel fees is warranted when the unsuccessful party has acted in bad faith or for oppressive reasons. *Alyeska*, 421 U.S. at 258–59, 95 S.Ct. at 1622. Hence, an award of fees is appropriate when the losing party's claims are "entirely without color and has been asserted wantonly for purposes of harassment or delay or for other improper reasons." *Browning Debenture Holders' Committee v. Dasa Corporation*, 560 F.2d 1078 at 1088 (2d Cir.1977). Under this test a claim is "entirely without color" when it lacks any legal or factual basis. *Sierra Club v. United States Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir.1985). A court must decide whether a reasonable attorney could have concluded that the facts supporting the claim might be established, and not whether such facts had been established. *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980). A showing of subjective bad faith is not required; only that a competent

attorney should not have formed "a reasonable belief that the pleading is well grounded in fact...." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985); *In re Capitol-York Construction Corp.*, 52 B.R. 317 (Bankr.S.D.N.Y.1985). Pursuant to Bankruptcy Rule 9011(a), which tracks Fed.R.Civ.P. 11, an attorney's signature on a pleading or motion is an assertion "that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact ...; and that it is not interposed for any improper purpose, such as to harrass [sic], to cause delay, or to increase the cost of litigation."

▮ That Gloria F. Baker regarded the debtor corporation as her nominee for the ownership and operation of the apartment complex, a fact which she claims was known to Associates, is sufficient basis for her and her husband, Leon C. Baker, as attorney for the debtor and Gloria F. Baker, to believe that Gloria F. Baker's application to transfer legal title to her was meritorious. It was not unreasonable for the Bakers to believe that this objective could be accomplished by motion rather than by an adversary action as required by Bankruptcy Rule 7001(1), because what was really requested was that the debtor abandon its interest in the leasehold to Gloria F. Baker in accordance with 11 U.S.C. § 554(b). Moreover, the Bakers reasonably believed that the debtor's estate does not include equitable interests of third parties in properties as to which the debtor at one time had legal title. While it was clear that as an insider and controlling officer of the debtor, Gloria F. Baker was not deprived of ownership of the property by any fraud perpetrated by the debtor, she did have reason to believe that her conduct in connection with the property might have constituted constructive notice of her ownership. She did not prevail as to this issue because of insufficiency of proof and not because her claim was entirely without color or asserted for purposes of harassment or delay. Accordingly, Associates' request for attorneys' fees will be denied.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the persons in this case in accordance with 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G).

2. The state court default order in favor of Latham Sparrowbush Associates, as landlord, which confirmed the landlord's termination of the debtor's leasehold interest in the apartment complex in question in accordance with Article 32 in the lease, and which order was affirmed on appeal, is final and *res judicata* as to such termination.

3. The state court order which confirmed the termination of the debtor's leasehold interest in the apartment complex in question before the filing of the debtor's Chapter 11 petition precludes the debtor from claiming that such terminated leasehold interest constitutes property of the estate within the meaning of 11 U.S.C. § 541. Therefore, the automatic stay imposed under 11 U.S.C. § 362(a) does not operate to enjoin Latham Sparrowbush Associates and the state court post-judgment receiver from enforcing any rights which they may claim with respect to such leased property. The motion by Latham Sparrowbush Associates which asserts this position is granted.

4. The debtor's motion to hold Latham Sparrowbush Associates and the state court post-judgment receiver in contempt for violating the automatic stay with respect to the debtor's leasehold interests which were terminated before the debtor's Chapter 11 petition was filed, is denied.

5. Gloria F. Baker's motion for an order directing the debtor to convey the legal title to the apartment complex lease to her is denied as not in the best interests of this estate.

6. The motion by Latham Sparrowbush Associates for an order directing Leon C. Baker to pay its attorneys' fees incurred in opposing Gloria F. Baker's motion seeking

a transfer of the debtor's interest in the apartment complex lease, is denied.

SETTLE ORDER in accordance with the foregoing.